**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

```
------------------------------------------------- x
In re:                                            :    Chapter 11
                                                  :
AMTRUST FINANCIAL CORPORATION,                    :    Case No. 09-21323
et al.,¹                                          :    (Jointly Administered)
                                                  :
       Debtors.                                   :    Honorable Patricia E. Morgenstern-Clarren
                                                  :
------------------------------------------------- x
```

**OBJECTION OF THE FEDERAL DEPOSIT
INSURANCE CORPORATION, AS RECEIVER OF AMTRUST
BANK TO (A) DEBTORS' MOTION REQUESTING (I) ENTRY
OF (A) INTERIM AND FINAL ORDERS (1) AUTHORIZING USE
OF CASH COLLATERAL, (2) GRANTING LIMITED, PROVISIONAL
ADEQUATE PROTECTION, AND (3) MODIFYING THE AUTOMATIC
STAY AND (II) THE SCHEDULING OF A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001 (DOCKET NO. 4); AND (B) SUPPLEMENT
TO DEBTORS' MOTION REQUESTING (I) ENTRY OF (A) INTERIM
AND FINAL ORDERS (1) AUTHORIZING USE OF CASH COLLATERAL,
(2) GRANTING LIMITED, PROVISIONAL ADEQUATE PROTECTION,
AND (3) MODIFYING THE AUTOMATIC STAY AND (II) THE SCHEDULING OF
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 (DOCKET NO. 33)**

The Federal Deposit Insurance Corporation (the "**FDIC**"), as Receiver of AmTrust Bank

(the "**FDIC-Receiver**"), by and through undersigned counsel, hereby objects to: (A) *Debtors'*

*Motion Requesting (I) Entry of (A) Interim and Final Orders (1) Authorizing Use of Cash*

*Collateral, (2) Granting Limited, Provisional Adequate Protection, and (3) Modifying the*

*Automatic Stay and (II) the Scheduling of a Final Hearing Pursuant To Bankruptcy Rule 4001*

(Docket No. 4) (the "**Cash Collateral Motion**"); and (B) *Supplement to Debtors' Motion*

*Requesting (I) Entry of (A) Interim and Final Orders (1) Authorizing Use of Cash Collateral, (2)*

---

¹       The Debtors are the following entities:  AmTrust Financial Corporation; AmTrust Real Estate Investments,
Inc.; AmTrust Insurance Agency, Inc.; AmTrust Investments, Inc.; AmTrust Properties, Inc.; and AmTrust
Management, Inc.

*Granting Limited, Provisional Adequate Protection, and (3) Modifying the Automatic Stay and (II) the Scheduling of a Final Hearing Pursuant to Bankruptcy Rule 4001* (Docket No. 33) (the "**Supplement**"), filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"). In support of this Objection, the FDIC-Receiver respectfully states as follows:

## PRELIMINARY STATEMENT

1.      FDIC-Receiver has a $2.152 billion ninth priority claim under section 507(a)(9) of the Bankruptcy Code and is, therefore, by far the largest creditor in the Debtors' cases. As widely reported in the local and national media, the Office of Thrift Supervision closed AmTrust Bank ("**AmTrust Bank**") on December 4, 2009 and appointed the FDIC as Receiver. AmTrust Bank was a wholly owned savings association of AmTrust Financial Corporation ("**AFC**"). Pursuant to 12 U.S.C. § 1821(d)(2)(A),[2] the FDIC-Receiver succeeds by operation of law to the rights, titles, powers, and privileges, including legal claims, of AmTrust Bank, and of any stockholder, account holder, depositor, officer or director of AmTrust Bank.

2.      While the FDIC-Receiver is in the process of investigating the nature and extent of its claims against the Debtors, FDIC-Receiver currently estimates that its claims (general unsecured, priority and superpriority claims[3]) against the Debtors exceeds $2.152 billion, based on the FDIC's estimate of net loss to the FDIC insurance fund, as of August 31, 2009, as directly

---

[2]       12 U.S.C. § 1821(d)(2)(A) provides:

The Corporation shall, as conservator or receiver, and by operation of law, succeed to —

(i)       all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii)      title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

12 U.S.C. § 1821(d)(2)(A).

[3]       *See* 12 U.S.C. § 1821(d)(17)(D) ("The rights under this paragraph of the Corporation and any conservator described in subparagraph (A) shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11.").

caused by the failure of AFC to maintain at AmTrust Bank certain minimum capital requirements.

3.     All or substantially all of the FDIC-Receiver's claims against AFC are priority claims under sections 365(o) and 507(a)(9) of the Bankruptcy Code[4] based on AFC's obligations and commitments to attain and maintain certain minimum capital requirements pursuant to:  (a) applicable capital and liquidity requirements including, without limitation, the statutory and regulatory provisions set forth in 12 U.S.C. § 1831o, 12 U.S.C. § 1464(s), 12 C.F.R. § 225.4 and other regulations promulgated thereunder; (b) the voluntary, but binding commitments of AFC including, without limitation, those expressed in the (i) *Order to Cease and Desist* (No. CN 08-16) (the "**Cease and Desist Order**") issued by the Office of Thrift Supervision ("**OTS**") on or about November 19, 2008 to which AFC consented, and (ii) the *Stipulation and Consent to Issuance of Order to Cease and Desist* (the "**Stipulation to Cease and Desist**") entered into between the OTS and AFC on or about November 19, 2008; and (c) otherwise under law and equity.

4.     In addition, without waiving any rights or claims, the FDIC-Receiver anticipates asserting claims against all of the Debtors for:  (a) tax refunds in the amount of up to approximately $187 million (which refunds are attributable to AmTrust Bank under a tax sharing agreement among AmTrust Bank and the Debtors and are property of the FDIC-Receiver and not

---

[4]     *See* 11 U.S.C. § 507(a)(9) ("Ninth, allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution."); 11 U.S.C. § 365(o) ("In a case under chapter 11 of this title, the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency), to maintain the capital for an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507.  This subsection shall not extend any commitment that would otherwise be terminated by any act of such an agency."); *see also Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1251-52 (10th Cir. 2001).

property of the Debtors' bankruptcy estate)[5]; (b) intercompany charges, including without limitation, claims arising under the intercompany agreements by and between AmTrust Bank, AFC and each of the other Debtors, which agreements are dated January 1, 2009; (c) litigation proceeds received or which may be received by the Debtors on accounts of litigation claims prosecuted by the FDIC-Receiver to the extent that such litigation is based on acts or omissions affecting or causing harm to AmTrust Bank; (d) insurance and bond proceeds and unearned premium refunds to which the FDIC-Receiver is entitled under applicable insurance policies; (e) and all other amounts owed to AmTrust Bank and the FDIC-Receiver under law and equity against all, or any, of the Debtors, including without limitation other potential claims under 12 U.S.C. § 1818, *et seq*.

5.     In contrast, the holders (the "**Senior Noteholders**") of the 11.78% Amended and Restated Senior Notes due October 2012 (the "**Senior Notes**") are owed approximately $99.49 million. *See* Goldberg Declaration (Docket No. 3) (the "**Goldberg Declaration**") at ¶ 13. The Debtors have asserted that it is "inevitably certain" that the Senior Noteholders' security interest will be avoided under sections 544, 547 and 548 of the Bankruptcy Code. *See* Cash Collateral Motion at ¶¶ 28-35. If the Debtors are correct, the Senior Noteholders hold unsecured non-priority claims against AFC only, which claims are subordinate to the ninth priority claims held by the FDIC-Receiver.

6.     By the Cash Collateral Motion, as amended by the Supplement, the Debtors seek authority to (a) grant the Senior Noteholders provisional replacement liens in the Debtors' assets

---

[5]      *See*, *e.g.*, *Capital Bancshares, Inc. v. Fed. Deposit Ins. Corp.*, 957 F.2d 203, 208 (5th Cir. 1992); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 579 F.2d 449, 452-54 (5th Cir. 1978); *W. Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir. 1973); *United States v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 111 B.R. 631, 637-39 (Bankr. N.D. Ohio 1990); *Fed. Deposit Ins. Corp. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990).

(exclusive of avoidance actions) and (b) pay the legal fees and expenses of the Senior Noteholders notwithstanding the fact that the Debtors have asserted in the Cash Collateral Motion that the Senior Noteholders are not entitled to adequate protection. The FDIC-Receiver objects to the payment of the Senior Noteholders' legal fees and expenses. The Senior Noteholders have no right to adequate protection under the Bankruptcy Code, much less the right to have the Debtors pay their legal fees and expenses. For this reason, the FDIC-Receiver respectfully asks that this Court deny the Cash Collateral Motion and the Supplement to the extent that both seek to provide the Senior Noteholders with any adequate protection other than provisional replacement liens in the Debtors' assets (excluding avoidance actions), subject to a decision by this Court as to whether the Senior Noteholders are entitled to adequate protection.

## JURISDICTION

7.      The Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334. Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### *General Background*

8.      On November 30, 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Pursuant to an order entered by the Court on December 4, 2009, the Debtors' cases are being jointly administered for procedural purposes only. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

***The Debtors' Cash Collateral Motion***

    A.       **The Cash Collateral Motion**

    9.       On the Petition Date, the Debtors filed the Cash Collateral Motion. By the Cash Collateral Motion, the Debtors seek authority to (a) use certain cash collateral that may be encumbered by security interests held by the Senior Noteholders and (b) provide the Senior Noteholders with provisional adequate protection in the form of a replacement lien in substantially all of the Debtors' assets (excluding avoidance actions) to the extent of any diminution in the value of the Senior Noteholders' purported interest in the Debtors' cash. *See* Cash Collateral Motion at pp. 1-2.

    B.       **The Adversary Complaint to Avoid Liens and Security Interests**

    10.      As set forth in the Cash Collateral Motion and the *Complaint to Avoid and Recover Preferential Transfers and Constructively Fraudulent Transfers and Obligations Under 11 U.S.C. §§ 544, 547, 548, 550 and 551 and Applicable State Law* (Docket No. 16) (the "**Adversary Complaint**"), the liens and security interests held by the Senior Noteholders are subject to avoidance under sections 544, 547 and 548 of the Bankruptcy Code. Cash Collateral Motion at ¶¶ 28-33.

    C.       **Transformation of Unsecured Notes Into Secured**
           **Obligations of the Debtors Within Ninety (90) Days of the Petition Date**

    11.      Prior to September 2, 2009, the Original Senior Notes dated October 20, 2005 (as amended, the "**Original Senior Notes**") were unsecured obligations of AFC. Cash Collateral Motion at ¶ 19; Goldberg Declaration at ¶ 56. All of the other Debtors, defined in the Cash

- 6 -

Collateral Motion as the "Subsidiary Guarantors,"[6] were not indebted to the Senior Noteholders. *See id.*

12.     On or about September 2, 2009, the Original Senior Notes were replaced by new secured notes through the execution of the *Waiver and First Amendment to Note Purchase Agreement dated June 23, 2009*, the *Amendment to Waiver and First Amendment to Note Purchase Agreement dated September 2, 2009* and the *Pledge and Security Agreement dated September 2, 2009* (the "**Security Agreement**"), pursuant to which AFC issued the Senior Notes to the Senior Noteholders in exchange for the Original Notes.  Cash Collateral Motion at ¶¶ 18-19.  Under the Senior Notes, among other things, the interest rate was increased from 5.78% to 11.78% and the maturity date was made three (3) years earlier than under the Original Notes. *See id.* at ¶ 18.  The Senior Noteholders did not provide any new money or value to the Debtors in connection with the execution of the Senior Notes.

13.     On or about September 2, 2009, the Subsidiary Guarantors guaranteed AFC's obligations under the Senior Notes, which guarantees are secured by a security interest in substantially all of the Subsidiary Guarantors' assets.  *See id.* at ¶ 19.  The Senior Noteholders did not provide any money or value to the Subsidiary Guarantors in connection with the execution of the Security Agreement and related guarantees.  The Senior Noteholders filed UCC-1 financing statements with the Ohio Secretary of State in respect of the collateral pledged by the Debtors under the Security Agreement (as further defined in Paragraphs 22-23 of the Cash Collateral Motion and Sections 2.2 and 2.1 of the Security Agreement, the "**Collateral**") on September 3, 2009.

---

[6]     The Subsidiary Guarantors are:  AmTrust Real Estate Investments, Inc., AmTrust Investments, Inc., AmTrust Properties, Inc., AmTrust Management, Inc. and AmTrust Insurance Agency, Inc.

14.     In sum, on or about September 2nd and 3rd, the Senior Noteholders went from being general unsecured creditors of AFC to holding perfected security interests in substantially all of the Debtors' assets (*i.e.*, the assets of AFC and the Subsidiary Guarantors).

### D.     Provisional Adequate Protection Offered Given Inevitable Avoidance of Liens and Security Interests

15.     The Debtors have asserted that the avoidance of the security interests granted to the Senior Noteholders is "an inevitable certainty" because (a) the Senior Noteholders obtained and perfected their security interests in the Collateral within ninety (90) days of the Petition Date, (b) the Debtors received less than reasonably equivalent value in exchange for granting the guarantees and security interests under the Security Agreement, and (c) the Debtors were insolvent or became insolvent, were engaged in business for a transaction for which property remaining with the Debtors was unreasonably small capital or incurred debts that would be beyond the Debtors' ability to pay as such debts matured as a result of the Security Agreement and the documents executed in connection therewith.  Cash Collateral Motion at ¶ 33; Goldberg Declaration at ¶ 68.

16.     For this reason, the adequate protection offered by the Debtors to the Senior Noteholders under the Cash Collateral Motion is provisional.  *See* Cash Collateral Motion at ¶ 35-36.  The Senior Noteholders are not entitled to adequate protection if their security interests are avoided.   The Debtors, thus, initially offered to provide the Senior Noteholders with provisional replacement liens in substantially all of the Debtors' assets (excluding avoidance actions) to the extent of any diminution in the value of the Senior Noteholders' purported interest in the Debtors' cash.

- 8 -

_**Supplement to the Cash Collateral Motion**_

17.      Following the first day hearing held on December 3, 2009 in respect of certain of the motions and application filed by the Debtors on the Petition Date, the Debtors filed the Supplement.   The Supplement purports to represent an agreement between the Debtors and certain of the Senior Noteholders regarding the payment of the Senior Noteholders' legal fees and expenses as additional adequate protection.   The FDIC was not involved in the discussions surrounding this agreement.

18.      By the Supplement, the Debtors propose to pay the Senior Noteholders the actual and reasonable legal fees and expenses incurred by the Senior Noteholders on a monthly basis pursuant to procedures typically utilized to pay professionals retained to represent Chapter 11 debtors and creditors' committees.   _See_ Supplement at ¶¶ 12-13.   Under the Supplement, the Debtors reserve the right of other parties in interest to seek "re-characterization" of fees and expenses paid to counsel for the Senior Noteholders and/or to seek "disgorgement" of such fees and expenses.  _See id._ at ¶ 12.

19.      If the Senior Noteholders' security interests are avoided, the Senior Noteholders are unlikely to receive any distribution from AFC's estate because their claims are subordinate to the $2.152 billion priority claim asserted by the FDIC-Receiver.   If the secured guarantees provided by the Subsidiary Guarantors are avoided, the Senior Noteholders may have no direct claims against the other Debtors.   For this reason, if the Senior Noteholders receive interim payments for professional fees and expenses, the Debtors may be forced to litigate with the Senior Noteholders or with Weil Gotshal over fee disgorgement.   The FDIC-Receiver does not believe that the Debtors or their estates should be forced to litigate disgorgement of fees that the Debtors never should have had to pay in the first place.

20.     Further, the Debtors' proposal to pay the Senior Noteholders' legal fees and expenses on an interim basis will mean that the Debtors will be paying the Senior Noteholders' legal fees and expenses to litigate against them and to litigate against the FDIC-Receiver.  There is no basis, legal or practical, to permit the Debtors to pay the Senior Noteholders' legal fees and expenses as adequate protection.

## OBJECTION

21.     The FDIC-Receiver hereby objects to the Cash Collateral Motion and the Supplement to the extent that both seek to provide the Senior Noteholders with adequate protection in any form (other than the provisional adequate protection the Debtors' offered in their Cash Collateral Motion before the Supplement was filed).  The Debtors do not need authority to use cash collateral because the cash at issue in the Debtors' cases is not collateral.  In addition, there is no legal basis to permit an unsecured creditor or an undersecured creditor to receive payments for legal fees and expenses on an interim basis under the Bankruptcy Code.

### A.     The Senior Noteholders Have No Right to Adequate Protection

22.     The Senior Noteholders do not have a right to adequate protection under the Bankruptcy Code.  As a general rule, under sections 363(c)(2) and 363(e) of the Bankruptcy Code, a debtor may not use cash collateral unless the secured creditor with an "interest" in such cash collateral consents or the court conditions such use as is necessary to provide adequate protection.[7]  Under section 361 of the Bankruptcy Code, when adequate protection is required under section 363 of the Bankruptcy Code to protect "an interest of an entity in property," such

---

[7]     Section 363(c)(2) of the Bankruptcy Code provides:  "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless — (A) each entity that has an *interest* in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2) (emphasis added).  Section 363(e) of the Bankruptcy Code provides:  "[O]n request of an entity that has an *interest* in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection."  11 U.S.C. § 363(e) (emphasis added).

adequate protection may be provided by periodic cash payments, an additional or replacement lien, or other relief that will result in the realization by such entity of the indubitable equivalent of such entity's interest in the property. *See* 11 U.S.C. § 361.

          1.       Interests Subject to Avoidance Under Chapter 5 of the
                   Bankruptcy Code Are Not Entitled to Adequate Protection

23.      It is well established, however, that a court is not required to grant adequate protection to a secured creditor whose interests in the debtor's assets are likely to be avoided under Chapter 5 of the Bankruptcy Code even though such interests have not been formally avoided through the entry of a final judgment in an adversary proceeding. *See In re May*, No. 4:02-bk-14785, 2002 Bankr. LEXIS 1847, at *11-12 (Bankr. E.D. Ark. July 18, 2002) (holding, prior to the entry of a final judgment in an adversary proceeding, that a creditor was not entitled to adequate protection because its security interest may be avoidable as a preference under section 547 of the Bankruptcy Code, but not making any findings as to whether the creditor's security interest was valid)[8]; *In re Millerburg*, 61 B.R. 125, 127 (Bankr. E.D.N.C. 1986) (holding, prior to the filing of an adversary proceeding, that a creditor was not entitled to adequate protection because there was "a high probability" that its lien would be avoided as a "preferential transfer under 11 U.S.C. § 547" and, therefore, such creditor was not entitled to relief from the automatic stay); *see also First Nat'l Bank of Denver v. Turley*, 705 F.2d 1024, 1027 (8th Cir. 1983) (affirming bankruptcy court's finding that a creditor was not entitled to adequate protection because its lien was not noted on the certificate of title on the petition date, making its security interest was subject to avoidance under section 544(a)(1) of the Bankruptcy Code); *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. in Rehabilitation (In re Scottsdale*

---

[8]       Copies of unreported opinions and orders are attached hereto as **Exhibit A**.

- 11 -

*Med. Pavilion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993) (finding that if a creditor's interest in cash collateral is subject to avoidance under section 544(a)(1) of the Bankruptcy Code, "the interest to be protected is tenuous, and not deserving of much in the way of adequate protection."); *Chama, Inc. v. First N. Bank & Trust (In re Chama, Inc.)*, 265 B.R. 662, 669 (Bankr. D. Del. 2000) (holding creditor had no right to adequate protection where the creditor's security interest was avoidable under section 544(a)(1) of the Bankruptcy Code because the financing statement was defective); *In re Cambridge Biotech Corp.*, 178 B.R. 34, 40 (Bankr. D. Mass. 1995) (denying motion for approval of an agreement between the debtor and a creditor for relief from the automatic stay because the creditor was not entitled to adequate protection because its security interest was unperfected and, therefore, subject to avoidance under section 544(a)(1) of the Bankruptcy Code); *Cash Register Sys., Inc. v. Munsey Corp. (In re Munsey Corp.)*, 10 B.R. 864, 865-66 (Bankr. E.D. Pa. 1981) (finding that a creditor did not have an "interest in property requiring protection" when the creditor's security interest was unperfected and, therefore, subject to avoidance under section 544(a)(1) of the Bankruptcy Code).

24.     In addition, under section 506(a) of the Bankruptcy Code, a court has the authority to determine the value of a creditor's interest in property for different purposes and at different stages in a bankruptcy, including for purposes of adequate protection under section 363 of the Bankruptcy Code.  *See*, *e.g.*, *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 380 (5th Cir. 1987) ("Under § 506(a), a secured creditor's claim may be valued at different times during the bankruptcy for different purposes under the Code [e.g., § 502 allowance of claim, § 364 borrowing, §§ 362 or 363 adequate protection, § 1129(b) cram-down]."), *aff'd* 484 U.S. 365 (1988); 4 *Collier on Bankruptcy* § 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed.

- 12 -

rev. 2009) ("In general, the purpose of valuation is to be determined in light of the particular proceeding or Code provision to which the valuation pertains, such as a request for adequate protection under section 363(e) . . . or the determination of the amount of a secured creditor's claim for purposes of confirming a plan.").

25.     As set forth in the Adversary Complaint and below, the security interests granted by the Debtors to the Senior Noteholders are likely to be avoided under sections 544, 547, and 548 of the Bankruptcy Code.  For this reason, and without prejudice to the rights of the Senior Noteholders to assert security interests in the Debtors' assets and fully litigate their rights in defense to the Adversary Complaint later in the Debtors' bankruptcy, the Senior Noteholders are not entitled to adequate protection.

2.     The Security Interests Granted by AFC Are
Avoidable Under Section 547 of the Bankruptcy Code

26.     The security interests granted by AFC to the Senior Noteholders on or about September 2, 2009 are avoidable under section 547 of the Bankruptcy Code.  *See* Adversary Complaint at ¶¶ 43-49.   According to the Adversary Complaint and upon review of the documents attached thereto as exhibits, it appears that the security interests transferred to the Senior Noteholders by AFC are avoidable because they:  (a) were transfers of an interest of the Debtors in property; (b) were to or for the benefit of the Senior Noteholders; (c) were for or on account of an antecedent debt owed by AFC before such transfer was made; (d) were made while AFC was insolvent; (e) were made within ninety (90) days prior to the Petition Date; and (f) would enable the Senior Noteholders to receive more than such creditors would receive if AFC's case were converted to Chapter 7 and the security interests had not been granted.  *See* 11 U.S.C. § 547; *see also Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 748 (6th Cir. 2005) (finding security interest perfected by the creditor within ninety (90) days of the petition date

- 13 -

was avoidable under section 547 of the Bankruptcy Code); *Frank v. ITT Commercial Fin. Corp. (In re Thompson Boat Co.)*, 230 B.R. 815, 822 (Bankr. E.D. Mich. 1995) (finding security interest subject to avoidance because creditor filed its financing statement within the ninety (90) day preference period).

27.     The facts upon which this Court can conclude that the security interests granted by AFC to the Senior Noteholders are likely to be avoided under section 547 of the Bankruptcy Code are beyond dispute, can be found on the face of the documents filed by the Debtors as Exhibits to the Adversary Complaint or are presumed under the statute.  There can be no dispute that the security interests granted by AFC are transfers of an interest of AFC in property and were made to or for the benefit of the Senior Noteholders.  AFC was indebted to the Senior Noteholders prior to the execution of the Security Agreement.  AFC is presumed to have been insolvent during the ninety (90) days preceding the Petition Date.  *See* 11 U.S.C. § 547(f).  The Security Agreement (Exhibit G to the Adversary Complaint) is dated September 2, 2009 — less than ninety (90) days prior to the Petition Date.  The UCC-1 Financing Statements filed by the Senior Noteholders (Exhibit H to the Adversary Complaint) are time-stamped September 3, 2009 at approximately 4:42PM — less than ninety (90) days prior to the Petition Date.  If the security interests granted by AFC are not avoided, the Senior Noteholders will receive more than if AFC's case were converted to Chapter 7 and the security interests had not been granted. Accordingly, it is highly likely that the Senior Noteholders' security interests in AFC's assets will be avoided under section 547 of the Bankruptcy Code.

3.     The Security Interests Granted by the Debtors Are Avoidable
           Under Sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code

28.     The secured guarantees granted by the Subsidiary Guarantors and the security interests granted by AFC to the Senior Noteholders on or about September 2, 2009 are avoidable

- 14 -

under sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code as constructively fraudulent transfers. *See* Adversary Complaint at ¶¶ 50-58. The security interests transferred to the Senior Noteholders by the Debtors are avoidable because: (a) the Debtors received less than reasonably equivalent value in exchange for such transfers, *see*, *e.g.*, *Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon)*, 299 B.R. 626, 638 (B.A.P. 10th Cir. 2003) (holding mortgages obtained by lender from the debtor-guarantors related to previously unsecured debt could be avoided under sections 544 and 548 of the Bankruptcy Code where forbearance by the lender at the time it obtained the mortgages did not constitute reasonably equivalent value because the debtor-guarantors received virtually nothing from the transaction)[9]; and (b) the Debtors (i) were insolvent on or about September 2, 2009 or became insolvent as a result of such transfers and, in the case of the Subsidiary Guarantors, as a result of the secured guarantees provided to the Senior Noteholders, (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was unreasonably small capital, or (iii) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured. *See* 11 U.S.C. § 544(b); 11 U.S.C. § 548(a)(1)(B).

---

[9]     *See Clark v. Sec. Pac. Bus. Credit (In re Wes Dor, Inc.)*, 996 F.2d 237, 243 (10th Cir. 1993) (holding debtor-subsidiary did not receive reasonably equivalent value from lender in exchange for pledge of assets to secure debtor's parent's debt to the lender where only a portion of the loan proceeds advanced to the parent by the lender were funneled to the debtor-subsidiary); *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.)*, 224 B.R. 27, 31 (B.A.P. 6th Cir. 1998) (holding that the debtor did not receive reasonably equivalent value for funds paid to its former shareholders in connection with a leveraged buyout, or its guarantee of the purchaser's obligations to the former shareholders, because neither the opportunity to obtain a new loan nor the benefit of new management constituted fair consideration for the obligations incurred by the debtor); *The Unencumbered Asset Trust v. Biomar Technologies, Inc. (In re Nat'l Century Fin. Enters., Inc.)*, 341 B.R. 198, 218 (Bankr. S.D. Ohio 2006) ("Courts have held that transfers made to benefit an insolvent third-party do not offer the possibility of providing reasonably equivalent value to the transferee"); *see also Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999) ("In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer.").

- 15 -

29.     The FDIC-Receiver believes, and therefore asserts, that AFC did not receive reasonably equivalent value in exchange for the security interests granted to the Senior Noteholders because at the time of the transfer of the security interests, AFC was hopelessly insolvent and would soon be forced to file for bankruptcy protection.  AFC received less than reasonably equivalent value from the Senior Noteholders when it pledged substantially all of its assets to the Senior Noteholders in exchange for a default waiver that only benefited the Senior Noteholders by permitting AFC to survive for an additional ninety (90) days.  The Subsidiary Guarantors did not receive any consideration — reasonable equivalent value or otherwise — from the Senior Noteholders when they guaranteed the obligations of their doomed parent and pledged substantially all of their assets to the Senior Noteholders.

30.     The Court does not need to fully adjudicate the adversary proceeding filed against the Senior Noteholders in order to determine that it is likely that the Senior Noteholders' security interests in the Debtors' assets will be avoided under sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code.  The facts that suggest that such outcome is highly likely are evident given the complete absence of any documents that show that the Debtors received reasonably equivalent value in connection with the execution of the Security Agreement and related guarantees.  The reasonably equivalent value defense is not intended to protect an unsecured creditor that makes a collateral grab on the eve of bankruptcy.  *See Solomon*, 299 B.R. at 637 ("At best, the March restructure bought Debtors a 30 day reprieve to work out Sabre's financial ills.  No quantifiable benefit was received by the Debtors in exchange for the March Mortgage while the Bank gained additional collateral to secure Sabre's and the Debtors' debt.  Nothing in the record suggests that Debtors received [reasonably equivalent value]  in exchange for the March Mortgage."); *see also*

- 16 -

*Wes Dor, Inc.*, 996 F.2d at 243; *Structurlite Plastics Corp.*, 224 B.R. at 31; *Nat'l Century Fin. Enters., Inc.*, 341 B.R. at 218.

31. In addition, the FDIC-Receiver believes, and therefore asserts, that the Debtors were insolvent on or about September 2, 2009 or became insolvent as a result of such transfers, were engaged in business or a transaction for which any property remaining with the Debtors was unreasonably small capital, or incurred debts that would be beyond the Debtors' ability to pay as such debts matured. Accordingly, the FDIC-Receiver submits that it is highly likely that the Senior Noteholders' security interests in the Debtors' assets will be avoided under sections 544(b) and 548(a)(1)(B) of the Bankruptcy Code.

32. The FDIC-Receiver concurs with the Debtors' assessment that the avoidance of the security interests granted to the Senior Noteholders is "an inevitable certainty." *See* Cash Collateral Motion at ¶ 33. On this basis, and pursuant to the case law cited herein, the Senior Noteholders have no right to adequate protection under sections 363 and 361 of the Bankruptcy Code and the Debtors should not be permitted to accede to their demands.

      **B.**     **The Bankruptcy Code Does Not Permit Interim Payments of
              Professional Fees and Expenses Owed to Undersecured Creditors**

33. Even assuming that the Senior Noteholders should be treated as secured at this stage in the Debtors' cases, the Senior Noteholders are not entitled to the payment of professional fees and expenses under section 506(b) of the Bankruptcy Code. Under section 506(b) of the Bankruptcy Code, the allowed amount of the oversecured claim includes "any reasonable fees, costs or charges provided for under the agreement or State statue." 11 U.S.C. § 506(b). A secured creditor, however, that is undersecured does not have the right to receive payment for professional fees as part of its secured claim.

- 17 -

34.     Here, no determination has been made under section 506(a) of the Bankruptcy Code or otherwise that the Senior Noteholders are oversecured.  Accordingly, the Senior Noteholders do not have the right to assert a secured claim for professional fees and expenses under section 506(b) of the Bankruptcy Code.

35.     As a practical matter, if the Senior Noteholders are secured and their security interests are not subject to avoidance and if the value of the Debtors' assets exceeds the value of the Senior Noteholders' claims (including claims for postpetition interest and professional fees and expenses) — then the Senior Noteholders will have a right to seek interest as well as payment for their professional fees and expenses.  If the Senior Noteholders are right, at issue is only a question of timing of payment.  The FDIC-Receiver does not seek to preclude the Senior Noteholders from asserting their security interests and defending their  rights in response to the Adversary Complaint.  Consistent with section 506(a) of the Bankruptcy Code, the FDIC-Receiver seeks a determination that the Senior Noteholders are not entitled to be treated as oversecured creditors at this stage in the Debtors' bankruptcy.

36.     Notwithstanding the foregoing, the FDIC-Receiver does not object to the Debtors providing the Senior Noteholders with *provisional* adequate protection liens in the Debtors' assets to cover any diminution in the value of the Debtors' assets provided that such adequate protection will not be deemed to apply, or to have ever applied, to any claims of the Noteholders if their security interests are avoided.

## **RESERVATION OF RIGHTS**

37.     The FDIC-Receiver reserves the right to assert and file a proof of claim pursuant to sections 501 and 507 of the Bankruptcy Code and a request for payment of an administrative expense claim pursuant to section 503 of the Bankruptcy Code.  Nothing contained herein shall constitute a waiver of or limit the FDIC-Receiver's claims against the Debtors or the Debtors'

estates.  In addition, the FDIC-Receiver reserves the right to object to the allowance of any claim asserted by the Senior Noteholders under the Bankruptcy Code and applicable law.  Nothing herein shall be deemed to be an acknowledgment of the validity of any claims or defenses asserted by the Senior Noteholders.

38.     Finally, given the importance of the Adversary Proceeding to the ultimate outcome and distribution in the Debtors' cases, the FDIC-Receiver respectfully requests that the Adversary Proceeding not be stayed in any respect.

## CONCLUSION

WHEREFORE, based on the foregoing, the FDIC-Receiver respectfully requests that the Court deny the Cash Collateral Motion and the Supplement to the extent that either seeks to provide the Senior Noteholders with adequate protection beyond the furnishing of provisional replacement liens to account for any diminution in the value of the Debtors' assets.

Dated: December 16, 2009
      Cleveland, Ohio

Respectfully submitted,


/s/ Eric R. Goodman
Joseph F. Hutchinson, Jr. (0018210)
Eric R. Goodman (0076035)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH  44114-3485
Telephone:  216.621.0200
Facsimile:  216.696.0740
E-mail:  jhutchinson@bakerlaw.com
        egoodman@bakerlaw.com

*Counsel for the Federal Deposit Insurance Corporation*

- 19 -

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

```
------------------------------------------------- x
In re:                                            :
                                                  :   Chapter 11
AMTRUST FINANCIAL CORPORATION,                    :
et al.,                                           :   Case No. 09-21323
                                                  :
          Debtors.                                :   Honorable Patricia E. Morgenstern-Clarren
                                                  :
------------------------------------------------- x
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 16, 2009, the foregoing *Objection of the Federal Deposit Insurance Corporation, as Receiver of AmTrust Bank to (A) Debtors' Motion Requesting (I) Entry of (A) Interim and Final Orders (1) Authorizing Use of Cash Collateral, (2) Granting Limited, Provisional Adequate Protection, and (3) Modifying the Automatic Stay and (II) the Scheduling of a Final Hearing Pursuant to Bankruptcy Rule 4001 (Docket No. 4); and (B) Supplement to Debtors' Motion Requesting (I) Entry of (A) Interim and Final Orders (1) Authorizing Use of Cash Collateral, (2) Granting Limited, Provisional Adequate Protection, and (3) Modifying the Automatic Stay and (II) the Scheduling of a Final Hearing Pursuant to Bankruptcy Rule 4001 (Docket No. 33)* was served electronically through the Court's ECF System on all parties indicated on the electronic filing receipt and by regular United States mail, postage prepaid, on the entities listed below:

| **Proposed Counsel for the Debtors**: | **Counsel for Allstate Life Insurance Company and Midland National Life Insurance Company**: |
|---|---|
| G. Christopher Meyer, Esq. | |
| Christine M. Pierpont, Esq. | John Winship Read, Esq. |
| Sherri L. Dahl, Esq. | Elizabeth A. Davis, Esq. |
| Squire Sanders & Dempsey LLP | Vorys, Sater, Seymour & Pease LLP |
| 4900 Key Tower | 2100 One Cleveland Center |
| 127 Public Square | 1375 East Ninth Street |
| Cleveland, OH  44114 | Cleveland, OH  44114 |
| -and- | -and- |
| Stephen D. Lerner, Esq. | Alfredo R. Perez, Esq. |
| Squire Sanders & Dempsey LLP | Weil, Gotshal & Manges, LLP |
| 221 E. 4th Street #2900 | 700 Louisiana, Suite 1600 |
| Cincinnati, OH  45202-4095 | Houston, TX  77002 |

**Office of the United States Trustee**:

Maria D. Giannirakis, Esq.
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave., East — Suite 441
Cleveland, OH  44114

**Proposed Counsel for the Official
Committee of Unsecured Creditors**:

Lawrence E. Oscar, Esq.
Daniel A. DeMarco, Esq.
Christopher W. Peer, Esq.
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, OH  44114

**Bank of New York Mellon as
Trustee for Debtors' 5.78% Senior Notes**:

The Bank of New York Mellon
Attn Trustee Amtrust Sr Notes
One Mellon Street
New York, NY  10286

-and-

Victoria E. Powers, Esq.
Schottenstein, Zox & Dunn Co., LPA
250 West Street, Suite 700
Columbus, OH  43215

**Bank of New York Mellon as
Debenture and Property Trustee**:

The Bank of New York Mellon
Attn Benita Vaughn
Two LaSalle Street
Suite 1020
Chicago, IL 60602

-and-

Victoria E. Powers, Esq.
Schottenstein, Zox & Dunn Co., LPA
250 West Street, Suite 700
Columbus, OH  43215

**The Depository Trust
and Clearing Corporation**:

Cede & Co, Nominee of the Depository Trust
Company
Attn:  Bankruptcy Department
55 Water Street
1st Floor South
New York, NY 10041-0099

**The Office of Thrift Supervision**:

Office of Thrift Supervision
M Jefferson Davis
1700 G Street NW
Washington, DC  20552

**The Internal Revenue Service**:

Internal Revenue Service
Attn:  Bankruptcy Department
PO Box 21126
Philadelphia, PA  19114

**The Ohio Department of Taxation**:

Ohio Department of Taxation
Attn:  Bankruptcy Division
PO Box 530
Columbus, OH  43216-0530

- 2 -

**The Florida Department of Taxation**:

Florida Dept. of Revenue General Tax Admin
Attn: Bankruptcy Department
1379 Blountstown Highway
Tallahassee, FL 32304-2716

**The Ohio Attorney General**:

Attorney General's Office Ohio
Attn: Enforcement Section
150 E Gay Street
21st Floor
Columbus, OH 43215

**The Arizona Attorney General**:

Attorney General's Office Arizona
Attn Enforcement Section
Department of Law
1275 W Washington Street
Phoenix, AZ 85007

**The City of Cleveland**:

City of Cleveland
Attn: Bankruptcy Department
601 Lakeside Ave
Cleveland, OH 44114

**U.S. Bank, N.A., as Trustee**:

US Bank NA as Trustee
Corporate Trust Department
425 Walnut Street
6th Floor CN-OH-W6CT
Cincinnati, OH 45202

**The Arizona Department of Taxation**:

Department of Revenue Arizona
Attn: Bankruptcy Department
1600 West Monroe
Phoenix, AZ 85007-2650

**The Florida Attorney General**:

Attorney General's Office Florida
Attn: Enforcement Section
PL 01 The Capitol
400 S Monroe Street
Tallahassee, FL 32399-1050

**The Securities and Exchange Commission**:

United States Securities and Exchange
Commission
Attn: Bankruptcy Department
100 F Street NE
Washington, DC 20549

**The Cleveland-Cuyahoga
County Port Authority**:

Dennis R. Wilcox, Esq.
Scott D. Simpkins, Esq.
Climaco, Lefkowitz, Peca, Wilcox & Garofilo
Co., L.P.A.
55 Public Square, Suite 1950
Cleveland, OH 44113

**Huntington National Bank, as Trustee**:

Huntington National Bank
Corporate Trust Department
917 Euclid Avenue
CM 23
Cleveland, OH 44115

**<u>New York Community Bank</u>:**

Jean R. Robertson, Esq.
Tiiara N.A. Patton, Esq.
Calfee, Halter & Griswold LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH  44114

<u>/s/ Eric R. Goodman</u>
Eric R. Goodman (0076035)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH  44114-3485