# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | **Chapter 11** |
| | ) | |
| **AMTRUST FINANCIAL CORPORATION, *et al.*,[1]** | ) | **Case No. 09-21323** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Judge Pat Morgenstern-Clarren** |
| | ) | |
| | ) | |

**AMENDED MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING THE PROPOSED SALE PROCESS, (B) AUTHORIZING AMTRUST INSURANCE AGENCY, INC. TO ENTER INTO AN AGREEMENT FOR THE SALE OF ITS ASSETS TO NOVAK INSURANCE AGENCY, INC. FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (C) WAIVING THE RULE 6004(h) 14 DAY STAY, AND (D) WAIVING THE LOCAL BANKRUPTCY RULE 9013-2 MEMORANDUM REQUIREMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move (the "Sale Motion") the Court for entry of an order (a) approving a proposed sale process, (b) authorizing debtor AmTrust Insurance Agency, Inc. to enter into a sale agreement,[2] for the sale (the "Sale") of assets to Novak Insurance Agency, Inc. ("Novak"), subject to receipt of higher and better offers, free and clear of liens, claims, interests, and encumbrances, pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), (c) waiving the Bankruptcy Rule 6004(h) 14 day stay, and (d) waiving the Local Bankruptcy Rule 9013-2 memorandum requirement. In support of the foregoing the Debtors respectfully represent as follows.

---

[1] The Debtors include AmTrust Financial Corporation (Case No. 09-21323), AmTrust Insurance Agency, Inc. (Case No. 09-21325), AmTrust Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Properties, Inc. (Case No. 09-21329), AmTrust Investments, Inc. (Case No. 09-21331) and AmTrust Management, Inc. (Case No. 09-21332).
[2] The Agreement is attached hereto as Exhibit A.

# I.  JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

# II.  BACKGROUND

2.      On November 30, 2009 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By orders entered on December 4, 2009, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.  *See* Docket No. 37.

3.      AmTrust Financial Corporation ("AFC") is the direct or indirect corporate parent of each of the other Debtors and of certain non-debtor subsidiaries (collectively, the "Non-Debtor Subsidiaries", and individually, a "Non-Debtor Subsidiary").  AmTrust Bank and its subsidiaries are not debtors in these proceedings (collectively, the "Bank Entities").

4.      Prior to the Petition Date, AFC's principal business consisted of acting as a holding company for AmTrust Bank, the Debtors, and the other Non-Debtor Subsidiaries (collectively, the "Companies", and individually, a "Company").  Under AmTrust Bank's charter, it was authorized to accept deposit accounts insured by the Federal Deposit Insurance Corporation ("FDIC") and to make consumer and business loans and certain related investments.  AmTrust Bank and AFC, as its corporate parent, have both been subject to oversight and regulation by the Office of Thrift Supervision ("OTS").

5.      AFC was formerly known as Ohio Savings Financial Corporation.  Debtor AmTrust Real Estate Investments, Inc. (fka OSF Properties, Inc.) ("AREI") is a wholly-owned subsidiary of AFC.  All but one class A voting share of Debtor AmTrust Insurance Agency, Inc.

(fka Ohio Savings Insurance Agency, Inc.) ("AIAI") is owned by AFC.[3] Debtors AmTrust Investments Inc., AmTrust Properties Inc., and AmTrust Management Inc. are wholly-owned subsidiaries of AREI.

6.    Debtor AIAI and non-Debtor AmTrust Investment Services, Inc. ("AISI") both provide services to customers within AmTrust Bank locations in Ohio, Florida, and Arizona. Wealth management advice is provided through AISI's financial advisors and AIAI's agents. AISI is registered with the U.S. Securities and Exchange Commission and (a) offers brokerage services, and (b) provides access to investment products, primarily mutual funds and variable annuities.  AIAI agents provide access to annuities and other property and casualty insurance products.  Products offered by AISI and AIAI are not FDIC insured.

7.    Prior to the Petition Date, as of September 30, 2009, the Companies recorded annual net revenues of more than $419 million.  As of October 31, 2009, the Companies had assets of approximately $11.7 billion and liabilities totaling $11.45 billion.  As of the Petition Date, the Companies collectively had approximately 1700 employees.

8.    Prior to the Petition Date, as of October 30, 2009, the Debtors' assets generally consisted of: (a) approximately $7.27 million in cash in various bank accounts; (b) interests in subsidiaries; (c) accounts receivable; (d) limited partnership, joint venture and other investment interests in real estate and other business entities; and (e) approximately $23.3 million (at book value) in fixed assets, including land, buildings, furniture and equipment.

9.    As of September 2, 2009, AFC had outstanding indebtedness for borrowed money totaling approximately $169.5 million, consisting of: (a) $99.49 million attributable to 11.78% senior notes due October 20, 2012; (b) $51.55 million of principal indebtedness attributable to junior subordinated deferrable interest debentures issued pursuant to an Indenture dated June 3,

---

[3] Robert Goldberg owns one class A voting share of AIAI.

~3~

1997 and (c) obligations under a capital lease entered into in conjunction with municipal bond financing consisting of (i) $2,000,000 of tax incentive bonds known as the 2003 City of Cleveland Ohio Economic Development Revenue Bonds and (ii) $16,000,000 construction cost bonds known as the Cleveland-Cuyahoga County Port Authority Taxable Development Revenue Bonds, Series 2004 (OSF Properties, Inc. Project).

10.     On December 4, 2009, the OTS closed AmTrust Bank and appointed the FDIC as receiver ("Receiver").  Pursuant to a Purchase and Assumption Agreement, dated December 4, 2009 (the "P&A"), New York Community Bank ("NYCB") acquired certain assets and assumed certain liabilities of AmTrust Bank.  The terms of the P&A did not include the acquisition of assets of debtor AIAI and non-debtor AISI.  AIAI and AISI continue to function within the branch locations of AmTrust Bank.

11.     Further facts regarding the Debtors, including their business operations, their assets and liabilities and the events leading to the filing of these chapter 11 cases, are set forth in detail in the Declaration of Peter Goldberg in Support of First-Day Pleadings.  *See* Docket No. 3.

### III.     REQUESTED RELIEF

12.     Debtor AIAI hereby seeks authority to sell those of its assets pertaining to its property and casualty business to Novak Insurance Agency, Inc. ("Novak"), subject to receipt of higher and better offers.  Specifically, the AIAI seeks authority to consummate and perform obligations included within the agreement attached hereto as Exhibit A (the "Agreement").

### A.     Summary of Agreement Terms

13.     The Agreement includes the following terms describing (1) assets included and excluded for the Sale, and (2) the purchase price.

### Description of AIAI Assets Included and Excluded From Transfer

14.     Pursuant to the Agreement, AIAI (the "Seller") intends to transfer to Novak (the "Buyer") and Novak intends to acquire the following assets, to the extent owned by AIAI (the "Assets") and used in AIAI's property and casualty insurance business (the "Business") at a closing anticipated for immediately following a sale hearing (the "Closing"):

A.     All machinery and equipment of the Business wherever located, including but not limited to all paper files, file cabinets, workstations and the computers of all customer service representatives and/or salespersons.

B.     All the Seller's right, title and interest in and to all contracts and agreements of property and casualty insurance, including any and all agency contracts between Seller and various insurance companies, including but not limited to the Travelers, Ohio Casualty, Safeco, MetLife, Encompass, Unitrin, Victoria and Foremost entities.

C.     All financial, tax and other records of Seller pertaining exclusively to the Business, provided that each party shall have reasonable access to all Seller's records to the extent needed for the filing of tax returns or other business purposes following the Closing.

D.     All intellectual property owned by Seller, including but not limited to Seller's rights to telephone numbers, facsimile numbers, e-mail addresses and the like used in connection with the Business and including any rights of Seller to use the name "AmTrust Insurance Agency, Inc.."  At the time of Closing, Seller shall use its best efforts to cause the e-mails directed to Seller with respect to the Business to be forwarded to an email address as directed by Buyer and shall thereafter immediately restrict access of Seller and its employees to such email.

E.     All client lists, referral source lists, contact lists, client records relating to the Business, and rights to clients of the Business, including work in process and any active leads, including leads forwarded to Seller after Closing.

F.     All office supplies owned by Seller and now or previously used in the operation of the Business and all of Seller's business forms and business records for the Business including letterhead and stationery.

G.     All of Seller's goodwill and other intangible assets of the Business.

H.     All of Seller's contractual and other rights to Business personnel, Business suppliers, and other contracts of the Business, to the extent desired by Buyer.

I.     All of Seller's other assets used in the day to day operation of the Business, including all accounts receivable and earned commissions that would constitute a

receivable of the Business as of the Closing, except as provided in paragraph 15.C. below.

J.      All renewals and rights to renewals relating to the Business from the insurance companies with which Seller does business.

K.      All of Seller's (i) computer software, (ii) historical accounting and sales data, (iii) customer lists, supplier's lists, sales literature, art work, display booths and units, (iv) other marketing materials, and (v) other business records, in each case to the extent owned by Seller and used exclusively in the Business.

15.      The following assets shall not constitute Assets purchased by Novak and shall be excluded from the Sale and retained by AIAI following the Closing:

A.      all cash;

B.      to the extent not expressly assumed by Seller and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code, all executory contracts of Seller;

C.      all Seller's right, title and interest in premiums or commissions payable to Seller with respect to insurance policies sold or renewed by Seller prior to Closing and for which such premiums or commissions are required to be paid in full or to the extent of installments required to be paid, prior to Closing;

D.      all rights, claims and choses in action against third parties related to the assets, properties and rights of Seller or the conduct of the Business, in each instance, to the extent arising out of transactions prior to the Closing Date, including but not limited to any claim or cause of action under Chapter 5 of the Bankruptcy Code; and

E.      Seller's assets used directly in the fixed annuity, variable annuity and life insurance portions of Seller's business.

**Purchase Price**

16.      In consideration for the Sale and transfer of the Assets, the Buyer intends to pay Seller the sum of $450,000 at the Closing.

**Additional Sale Terms**

17.      Pursuant to the Agreement, in the event of any competing bids for the Assets, resulting in Buyer not being the successful Buyer, Buyer will receive a breakup fee of $25,000 to

be paid at the time of the closing of the sale with such third party buyer. The minimum initial topping bid is set at $50,000 in excess of the Buyer's offer contained in the Agreement.

**B.** **Valuation**

18.     A formal valuation of AIAI has not been conducted.

**C.** **Marketing Efforts**

19.     The Debtors commenced marketing efforts in late December of 2009, by contacting parties known to AIAI in similar business. Ultimately, AIAI received 7 offers from prospective purchasers. The offer reflected in the Agreement is the highest and best offer received.

20.     On January 29, 2010, the Debtors executed the Agreement with Novak with terms that the Debtors believe provide maximum value for the Assets. Accordingly, the Debtors have concluded that the Sale of the Assets to Novak is in the best interest of the Debtors' estates.

**D.** **Section 363(b) of the Bankruptcy Code**

21.     A debtor may sell property of the estate outside of the ordinary course of business, subject to the approval of the Court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Pursuant to Rule 6004(f)(1) of the Bankruptcy Rules, sales of property outside of the ordinary course of business may occur by private sale or by public auction. The Debtors propose that the Court approve the Sale of the Assets pursuant to the terms herein.

**E.** **Sale Process**

22.     AIAI hereby seeks authority to utilize the following proposed sale process, including (i) the sale process timeline, (ii) initial topping bid requirement, and (iii) breakup fee (collectively, the "Sale Procedures").

23. **Timeline.** The Debtors propose the following Sale Procedures timeline (the "Timeline"):

| | |
|---|---|
| ➢ Sale Motion (this Motion) filed | January 29, 2010 |
| ➢ Objection deadline for Sale Procedures portion of the Sale Motion | February 9, 2010 |
| ➢ Hearing on Sale Procedures portion of the Sale Motion | February 11, 2010 |
| ➢ Deadline for competing bids | February 19, 2010, 5pm ET |
| ➢ Auction (10:00am ET) and objections to the Sale Motion (4:00pm ET) | February 22, 2010 |
| ➢ Hearing on remainder of Sale Motion | February 23, 2010 |

Additional Sale Procedures related to the assessment of competing bids are set forth on Schedule 1 of the proposed order at Exhibit B. On January 29, 2010, the Debtors filed a motion seeking expedited hearing of the portion of this Motion seeking approval of the Sale Procedures; such motion was granted and a hearing was scheduled for February 11, 2010.

24. Subject to the Court's approval of the Sale Procedures, the Debtors propose setting February 19, 2010 as the deadline for providing competing bids, and February 22, 2010 as the Auction date and the deadline for filing with the Court, objections to the proposed Sale of Assets. Competing bids must be delivered to Debtors' counsel, G. Christopher Meyer at cmeyer@ssd.com by no later than 5:00 p.m. Eastern Time on February 19, 2010. For the sake of clarity, competing bidders are not required to file objections to the Sale. The Debtors propose holding a sale hearing on February 23, 2010, or at such other time that is convenient for the Court.

25. The Debtors also seek authority to use the sale notice attached hereto as Schedule 2 to Exhibit B.

26. **Initial Topping Bid and Breakup Fee.** The Agreement mandates that any initial topping bid must be $50,000 in excess of the Buyer's offer contained in the Agreement.

~8~

Moreover, the Agreement requires that in the event of any competing bids for the Assets, resulting in Buyer not being the successful Buyer, Buyer will receive a breakup fee of $25,000 to be paid at the time of the closing of the sale with such third party buyer. Buyer has taken the lead in offering to buy the Assets. As the pace-setter, it is reasonable for the Buyer to receive a breakup fee of $25,000 to cover the costs of the Buyers expenses in this matter. Further, it is also reasonable to set the initial topping bid at $50,000 to establish an orderly process for assessing competing bids. It would be a waste of resources to allow competing bidders to frustrate the Nowak Agreement and add to the estate's cost in reviewing bids if a new bidder submitted an offer just a few dollars more than the Nowak sale.

27.     As set forth in a separate motion, filed contemporaneously with this Motion, the Debtors seek expedited hearing on the portion of this Motion related to the Sale Procedures. Accordingly, the Debtors attach two orders to this Motion, one order approving the proposed Sale Procedures (the "Sale Procedures Order") that the Debtors anticipate submitting to the Court in conjunction with the hearing scheduled for February 11, 2010, see Exhibit B, and a second order authorizing the Sale of the Assets that the Debtors anticipate submitting to the Court in conjunction with the Sale Hearing proposed for February 23, 2010, see Exhibit C. The Debtors believe that the process described in the Sale Procedures Order will promote the efficient and effective consideration of potential further offers for the Assets.

**F.     Basis for Relief**

28.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors request that the Court approve the Sale of the Assets free and clear of liens, claims, encumbrances, and interests. Section 363(b) of the Bankruptcy Code, specifically authorizes asset sales outside the ordinary course of business and provides that "[t]he trustee, after notice and a hearing, may use, sell, or

lease, other than in the ordinary course of business property of the estate[.]"  11 U.S.C. § 363(b)(1).

29.     In approving the sale of assets outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363(b) of the Bankruptcy Code, courts, including the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983)(hereinafter "*Lionel*").  *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986).  The issue before the *Lionel* court was "to what extent chapter 11 permits a bankruptcy judge to authorize the sale of an important asset of the bankrupt's estate, out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization."  *See id.* at 1070-71; *see also Stephens*, 789 F.2d at 389; *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991).

30.     The *Lionel* test requires a debtor to establish, as a threshold matter, a "sound business reason" justifying the pre-confirmation sale of assets.  *See Lionel*, 722 F.2d at 1070-71. The *Lionel* court held that, when addressing a motion pursuant to Bankruptcy Code section 363(b), a bankruptcy judge should consider all salient factors and the business justification for a debtor to sell assets pursuant to section 363(b).  *See id.*

31.     To demonstrate a sound justification warranting a sale, courts within the Sixth Circuit have developed a four-part test requiring a debtor to demonstrate:  (1) a sound business reason for the sale; (2) good faith; (3) an adequate sale price; and (4) accurate and reasonable notice of the sale.  *See In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994).

32.     The Sale proposed herein satisfies the Sixth Circuit's test for approving a section 363 sale.  AIAI aggressively marketed the Assets through the Debtors' contacts and connections in the business.   In all, AIAI representatives had discussions with interested entities which yielded seven offers

33.     AIAI and Novak participated in negotiations at arms' length and in good faith, which yielded the Agreement currently at issue.

34.     The cash price of $450,000 offered by Novak is adequate and reasonable based upon the totality of the assets and liabilities that will become the obligation of Novak if the Agreement is approved.

35.     Sound business reasons support selling the Assets to Novak.  If the Sale is not approved, then the Debtors will remain burdened by daily operational costs of the Business. Moreover, Debtors are currently in negotiations to sell certain distinct business operations of AIAI and AISI.  If completed, such sales would leave the Business as an "orphaned" operation. In contrast, allowing AIAI to sell the Assets to Novak, via the proposed Agreement, may permit the Debtors to reduce or avoid claims relating to AIAI, maximizing the value of the Debtors' assets and preserving the Debtors' resources.  Accordingly, Debtors believe that authorizing the Sale of the Assets is in the best interest of all of the Debtors' estates and creditors.

**G.     Section 363(f) of the Bankruptcy Code**

36.     Section 363(f) of the Bankruptcy Code permits debtors to sell assets free and clear of liens, claims, and encumbrances with interests in the property attaching to the net proceeds of the sale.  Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

A.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

~11~

B.    such entity consents;

C.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

D.    such interest is in bona fide dispute; or

E.    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

37.    The Agreement meets the requirements of section 363(f).  As the Court is aware from prior proceedings, the only interests asserted in assets of AIAI, those of the senior noteholders, are in bona fide dispute.  Also, such parties could be compelled to accept a money satisfaction of their alleged lien interests.

## IV.    WAIVER OF BANKRUPTCY RULE 6004(h)

38.    Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Because of the current posture of these cases and the desirability of finalizing the Sale as soon as possible, the Debtors request that any order approving the Sale be effective immediately by providing that the 14 day stay is inapplicable.

## V.    NOTICE OF THIS MOTION

39.    The Bankruptcy Court's electronic filing system will provide notice of this Motion to all parties that have registered for email notification of documents filed in these proceedings.  The Debtors previously served via prepaid regular U.S. mail a version of this motion filed on January 29, 2010; this amended Motion merely withdraws certain requested relief and fixes minor clerical errors.  Accordingly, serving this Motion via regular U.S. mail would be tantamount to a duplicate service and would waste scarce resources of the Debtors' estates.

~12~

## VI.     NO PRIOR REQUEST

40.     No prior request for the relief sought in this Motion has been made to this Court

or any other court in connection with these chapter 11 cases.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court (a) enter an

order, substantially in the form as the order attached hereto as Exhibit B, approving the Sale

Procedures, and (b) enter the order attached hereto as Exhibit C, which (i) authorizes AISI to

enter into the Agreement, (ii) authorizes the sale of assets of AIAI. to Novak, subject to receipt

of higher and better offers, free and clear of liens, claims, interests, and encumbrances, pursuant

to section 363 of the Bankruptcy Code, (iii) waives the Bankruptcy Rule 6004(h) 14 day stay,

and (iv) waives the Local Bankruptcy Rule 9013-2 memorandum requirement, and (c) grant such

other relief as the Court deems just and proper.

Dated:  February 5, 2010           Respectfully submitted,
                                   SQUIRE, SANDERS & DEMPSEY L.L.P.


                                    _/s/ G. Christopher Meyer_____
                                   G. Christopher Meyer  (Ohio 0016268)
                                   Christine M. Pierpont  (Ohio 0051286)
                                   Sherri L. Dahl (Ohio 0073621)
                                   127 Public Square, Suite 4900
                                   Cleveland, Ohio 44114-1304
                                   Telephone: (216) 479-8500
                                   Facsimile: (216) 479-8780
                                   E-mail:   CMeyer@ssd.com
                                   E-mail:   CPierpont@ssd.com
                                   E-mail:   SDahl@ssd.com

                                   And

                                   Stephen D. Lerner (Ohio 0051284)
                                   221 E. Fourth Street, Suite 2900
                                   Cincinnati, OH  45202
                                   Telephone:  (513) 361-1200
                                   Facsimile:   (513) 361-1201
                                   E-mail:  SLerner@ssd.com

                                   COUNSEL FOR DEBTORS

## EXHIBIT A

## ASSET PURCHASE AGREEMENT

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into this 29th day of January, 2010, by and between AmTrust Insurance Agency, Inc., an Ohio corporation, with its principal place of business at 1801 East 9th St., Cleveland, Ohio in its capacity as debtor and debtor in possession in Case No. 09-21325 pending before the United States Bankruptcy Court for the Northern District of Ohio ("Seller") and Novak Insurance Agency, Inc., an Ohio corporation, with its principal place of business at 29500 Aurora Rd., Suite 8, Solon, Ohio, 44139 ("Buyer").

## W I T N E S S E T H:

WHEREAS, Seller operates an insurance agency business providing for the sale of property and casualty insurance (the "Business"):

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller, substantially all of the assets of the Business, upon the terms and conditions hereinafter set forth;

WHEREAS, on November 30, 2009, Seller filed a petition for relief under Chapter 11 of title 11 of the U. S. Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"), commencing Case No. 09-12325 on the docket of the Bankruptcy Court (the "Case") and was thereafter continued in the possession and operation of its business; the Case being jointly administered with Case No. 09-21323; and

WHEREAS, Seller will file the necessary pleadings and notices and, subject to receipt of higher and better offers, will use its best efforts to obtain an Order from the Bankruptcy

Court unconditionally approving this Agreement and the transactions contemplated by the Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties hereto agree as follows:

## ARTICLE I.  PURCHASE AND SALE OF ASSETS

1.1  Description of Assets.  Upon the terms and subject to the conditions set forth in this Agreement, Seller shall convey, sell, assign and transfer, free and clear of all liens, claims and encumbrances, and Buyer shall purchase, at the Closing (as such term is hereinafter defined), the following described assets, in each instance to the extent owned by Seller and used in the Business (the "Purchased Assets"):

a. All machinery and equipment of the Business wherever located, including but not limited to all paper files, file cabinets, workstations and the computers of all customer service representatives and/or salespersons, all as listed on Exhibit 1.1(a) hereto.

b. All the Seller's right, title and interest in and to all contracts and agreements of property and casualty insurance, including any and all agency contracts  between Seller and various insurance companies, including but not limited to the Travelers, Ohio Casualty, Safeco, MetLife, Encompass, Unitrin, Victoria and  Foremost entities.

c. All financial, tax and other records of Seller pertaining exclusively to the Business, provided that each party shall have reasonable access to all Seller's records to the extent needed for the filing of tax returns or other business purposes following the Closing.

2

d. All intellectual property owned by Seller, including but not limited to Seller's rights to telephone numbers, facsimile numbers, e-mail addresses and the like used in connection with the Business and including any rights of Seller to use the name "AmTrust Insurance Agency, Inc.."  At the time of Closing, Seller shall use its best efforts to cause the e-mails directed to Seller with respect to the Business to be forwarded to an email address as directed by Buyer and shall thereafter immediately restrict access of Seller and its employees to such email.

e. All client lists, referral source lists, contact lists, client records relating to the Business, and rights to clients of the Business, including work in process and any active leads, including leads forwarded to Seller after Closing.

f. All office supplies owned by Seller and now or previously used in the operation of the Business and all of Seller's business forms and business records for the Business including letterhead and stationery.

g. All of Seller's goodwill and other intangible assets of the Business.

h. All of Seller's contractual and other rights to Business personnel, Business suppliers, and other contracts of the Business, to the extent desired by Buyer.

i. All of Seller's other assets used in the day to day operation of the Business, including all accounts receivable and earned commissions that would constitute a receivable of the Business as of the Closing, except as provided in paragraph 1.2 below.

3

j. All renewals and rights to renewals relating to the Business from the insurance companies with which Seller does business.

k. All of Seller's (i) computer software, (ii) historical accounting and sales data, (iii) customer lists, supplier's lists, sales literature, art work, display booths and units, (iv) other marketing materials, and (v) other business records, in each case to the extent owned by Seller and used exclusively in the Business.

1.2 _Excluded Assets_. Notwithstanding Section 1.1 above the following assets (collectively, the "Excluded Assets") shall not constitute Purchased Assets and shall be retained by Seller following the Closing: (i) all cash; (ii) to the extent not expressly assumed by Seller and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code, all executory contracts of Seller; (c) all Seller's right, title and interest in premiums or commissions payable to Seller with respect to insurance policies sold or renewed by Seller prior to Closing and for which such premiums or commissions are required to be paid in full or to the extent of installments required to be paid, prior to Closing or; (d) all rights, claims and choses in action against third parties related to the assets, properties and rights of Seller or the conduct of the Business, in each instance, to the extent arising out of transactions prior to the Closing Date, including but not limited to any claim or cause of action under Chapter 5 of the Bankruptcy Code; and (e) Seller's assets used directly in the fixed annuity, variable annuity and life insurance portions of Seller's business.

4

## ARTICLE II.  PURCHASE PRICE

2.1  <u>Consideration</u>.  In consideration for the sale and transfer of the Purchased Assets described in Section 1.1 above, Buyer shall pay Seller the sum of $450,000.00.

2.2  <u>Method of Payment</u>.  At the Closing, Buyer shall pay to Seller the consideration described in Section 2.1 as follows by bank check or otherwise immediately available funds delivered on the Closing Date.

2.3  <u>Breakup Fee</u>.  In the event of any competing bids for the Purchased Assets, which results in Buyer not being the successful bidder, Buyer shall be entitled to a breakup fee of $25,000 to be paid at the time of the closing of the sale with such third party buyer.  In the event of an auction, or subsequent bidding for the Purchased Assets, the initial topping bid shall be a minimum of $50,000 in excess of Buyer's offer contained herein (i.e., not less than $500,000), and any subsequent bids shall be in increments of not less than $25,000.

## ARTICLE III.  AGREEMENTS BETWEEN THE PARTIES

3.1  <u>Sales Taxes</u>.  Seller shall pay any sales or transfer taxes that may be due on account of the sale of the Purchased Assets.

3.2  <u>Covenant Not to Compete</u>.  For a period of two (2) years from the Closing Date, neither Seller nor any affiliate of Seller shall, own or operate any business that competes directly or indirectly with the Business, provided however, that Seller, AmTrust Investment Services, Inc. and OS Reinsurance Company shall continue to be permitted to operate any insurance business not involving property and casualty insurance.

5

## ARTICLE IV.  CLOSING

4.1  The Closing.  The transactions contemplated by this Agreement are to be closed, and all deliveries to be made at such time in connection therewith are to be made, at the offices of Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square., Cleveland, Ohio, at 10:00 A.M. on such date not later than February 23, 2010 as may be mutually agreed by the parties, provided that the Closing shall in any event be subject to satisfaction of all conditions set forth herein and take place within ten (10) days of satisfaction of all conditions set forth at Section 8.2 hereof, including specifically that set forth at Section 8.2(g) (said closing and the date herein referred to as the "Closing" and the "Closing Date", respectively).

## ARTICLE V.  REPRESENTATIONS OF SELLER

5.1  Corporate Organization.  Seller is a corporation duly organized, and validly existing under the laws of the State of Ohio.

5.2  Authorization.  The execution, delivery and performance of this Agreement and the other transactions contemplated hereby have been duly authorized by Seller, and, subject to the satisfaction on the conditions contained herein, this Agreement is a valid and binding obligation of Seller.  Neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will (i) violate the Certificate of Incorporation or By-Laws of Seller, or (ii) result in the creation or imposition of any lien or encumbrance in favor of any third party  with respect to any of the Purchased Assets.

5.3  Financial Information.  The financial information relating to the Business that has been provided to Buyer as described in Exhibit 5.3 attached hereto was prepared from

6

accounting records used in the preparation of Seller's financial statements and to the best of Seller's knowledge, is fairly presented in all material respects.

5.4 <u>Title to Personal Property</u>.  Except as otherwise set forth in Exhibit 5.4 attached hereto, the Seller has good title to the Purchased Assets and, upon the issuance by the Bankruptcy Court of the Order, will be able to transfer them to Buyer free and clear or all mortgages, liens, charges, encumbrances whatsoever.

5.5 <u>Litigation</u>.  Subject to the Bankruptcy Court's entry of the Order, Seller is not aware of any pending or threatened litigation, which could reasonably be expected to affect Seller's ability to complete the transactions herein, including Seller's sale of the Purchased Assets. Other than the Bankruptcy Case, Seller is not aware of any litigation pending against it that is not subject to the automatic stay of Section 362 of the Bankruptcy Code.

5.6 <u>Brokerage or Finder's Fee</u>.  Seller has carried on all negotiations relating to this Agreement so as not to give rise to a claim against Buyer for a brokerage commission or finder's fee.

<b><u>ARTICLE VI.  REPRESENTATIONS OF BUYER</u></b>

Buyer represents and warrants to Seller as follows:

6.1 <u>Corporate Organization</u>.  Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Ohio.

6.2 <u>Authorization</u>.  The execution, delivery and performance of this Agreement and the other transactions contemplated hereby have been duly authorized by Buyer and, subject to the satisfaction on the conditions contained herein,  this Agreement is a valid and binding

7

obligation of. Neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will violate the Certificate of Incorporation or By-Laws of Buyer, or any contract or commitment under which Buyer is a party or by which it may be bound.

6.3 <u>Litigation</u>. Subject to the Bankruptcy Court's entry of the Order, Buyer is not aware of any pending or threatened litigation, which could reasonably be expected to affect Buyer's ability to complete the transactions herein, including Buyer's purchase of the Purchased Assets.

6.3 <u>Brokerage or Finder's Fee</u>. Buyer has carried on all negotiations relating to this Agreement so as not to give rise to a claim against Seller for a brokerage commission of finder's fee.

<strong><u>ARTICLE VII. COVENANTS OF SELLER</u></strong>

7.1 <u>Continued Operations</u>. Between the date hereof and the Closing, Seller will use its best efforts to preserve its labor force and to assure the uninterrupted continuation of the Business operations in accordance with prior practices.

7.2 <u>Transition and Access to Information</u>. Between the date hereof and the Closing, Seller shall (i) give to Buyer and to Buyer's lawyers, accountants, and other representatives reasonable access, during normal business hours, to the Buyer or its representatives and all of the properties, books, contracts, commitments and records applicable to the Business and (iii) furnish Buyer with any information concerning the Business as Buyer may reasonably request. Seller agrees to maintain at Seller's sole expense, in good working order and with full access to Buyer for a period of not less than 30 days following Closing, the TAM agency

8

management software to allow for Seller's transfer of all electronic files that comprise Purchased Assets. During and the period prior to Closing, Buyer shall be given access to the employees of the Business for purposes of interviewing employees to determine which if any of Seller's employees Buyer may choose to subsequently hire. Notwithstanding the foregoing, Buyer but shall not be obligated to hire any employees of Seller.

7.3 <u>Approval of Bankruptcy Court</u>. Promptly after the execution of this Agreement, Seller will commence such proceedings and notify such parties as is necessary to obtain from the Bankruptcy Court the necessary Orders approving this Agreement and the transactions contemplated hereby. Seller will use its best efforts to pursue such proceedings and obtain an Order as soon as possible and in any event not later than February [ ], 2010. The pleadings filed by Seller seeking approval of this Agreement, shall be reasonably acceptable to Buyer's counsel and shall be provided to Buyer's counsel at least 24 hours prior to filing for review.

<u>ARTICLE VIII. CONDITIONS TO CLOSING</u>

8.1 <u>Conditions to Seller's Obligation</u>. The obligation of Seller to consummate the transactions contemplated by this Agreement is, at its option, subject to the following conditions:

(a) <u>Representations and Warranties</u>. Buyer's representations and warranties shall be true and correct as though made at the Closing.

(b) <u>Performance</u>. Buyer shall have performed and complied with all covenants, agreements, obligations and conditions on its part herein required to be performed or complied with at or before the Closing.

9

(c) <u>Approval of the Bankruptcy Court</u>.  The Order shall have been entered and docketed not later than February 23, 2010, and shall remain in full force and effect, and the period for appeals shall have run and no appeal from or challenge to the Order shall be pending.  Seller agrees to seek Bankruptcy Court approval for a waiver of any stay in order to permit immediate effectiveness of the Order.

(d) <u>Pending Litigation</u>.  There shall not be any suit or administrative proceeding, brought by a third party, pending or threatened against Seller or Buyer seeking to enjoin Seller and Buyer from completing the transactions contemplated by this Agreement.

(e) <u>Delivery of Closing Documents</u>.  Buyer shall have delivered at the Closing all of the documents described in Section 9.2 below.

8.2 <u>Conditions to Buyer's Obligations</u>.  The obligation of Buyer to consummate the transactions contemplated by this Agreement is, at its option, subject to the following conditions:

(a) <u>Representations and Warranties</u>.  Seller's representations and warranties shall be true and correct as though made at the Closing.

(b) <u>Performance</u>.  Seller shall have performed and complied with all covenants, agreements, obligations and commitments on its part herein required to be performed or complied with at or before the Closing.

(c) <u>Approval of the Bankruptcy Court</u>.  The Order shall have been entered and docketed not later than February 23, 2010, and shall remain in full force and effect, and the period for appeals shall have run and no appeal from or challenge to the Order shall be pending.  Buyer

10

agrees to cooperate with Seller's efforts to seek Bankruptcy Court approval for a waiver of any stay in order to permit immediate effectiveness of the Order.

(d) <u>Pending Litigation</u>. There shall not be any suit or administrative proceeding, brought by a third party, pending or threatened against Seller or Buyer seeking to enjoin Seller and Buyer from completing the transactions contemplated by this Agreement.

(e) <u>Absence of Casualty</u>. Between the date hereof and the Closing, there shall have been no material damage or destruction to the Purchased Assets; provided, however, that Buyer may, at its option, nevertheless close the transactions contemplated by this Agreement and, in that event, Seller shall assign to Buyer the proceeds of any insurance relating to the damaged or destroyed assets. The complete risk of damage or destruction to property shall remain with Seller until Closing.

(f) <u>Delivery of Closing Documents</u>. Seller shall have delivered at the Closing all of the documents described in.Section 9.1 below.

<u>**ARTICLE IX. DELIVERIES AT THE CLOSING**</u>

9.1 <u>Deliveries of Seller</u>. At the Closing, Seller shall deliver or cause to be delivered to Buyer duly executed:

(a) <u>Bill of Sale</u>. A General Conveyance, Assignment and Bill of Sale in a form reasonably satisfactory to Buyer, conveying to Buyer the Purchased Assets (tangible and intangible) to be sold and transferred hereunder, free and clear of all mortgages, liens, charges and encumbrances.

11

(b) <u>Specific Assignment</u>.  Specific assignments of any significant contracts, or orders transferred under Section 1.1, as Buyer may reasonably request to assure their continuity, together with any consents to such assignments that may be reasonably required.

(c) <u>Other Instruments of Conveyance</u>.  Any such other instruments as counsel for Buyer may reasonably deem necessary or desirable to effect or evidence the transfers contemplated hereby.

(d) <u>Officer's Certificate</u>.  A Certificate signed by the President and by the General Manager of Seller, dated the Closing Date, as to the truth of the Seller's representations and warranties at the Closing Date.

9.2     <u>Deliveries of Buyer</u>.  At the Closing, Buyer shall deliver or cause to be delivered to Seller, duly executed:

(a)     <u>Purchase Price</u>.  The funds described in Section 2.2 above.

(b)     <u>Officer's Certificate</u>.  A Certificate signed by the President of Buyer, dated the Closing Date, as to the truth of the Buyer's representations and warranties at the Closing Date.

<b><u>ARTICLE X.  POST CLOSING</u></b>

10.1     <u>Removal of Purchased Assets</u>.  Buyer will remove the Purchased Assets from the Seller's business premises, at Buyer's expense, not later than February [  ], 2010.  Buyer will be responsible for any damages to the such premises caused by Buyer, its employees or its agents in removing the Purchased Assets, but Buyer will not be responsible for any obligation of Seller with respect to its business premises.

12

10.2    Transfer of E-mail and Electronic Files.  Buyer shall cooperate in and promptly arrange for the transfer of all e-mails, email addresses, and electronic files included in the Purchased Assets to Buyer as set forth herein, including limiting access thereto in the future by Seller or its employees or agents.

## ARTICLE XI.  INDEMNITY

11.1    Seller and Buyer each agree to hold harmless and indemnify the other and their legal representative, successors and assigns from and against any loss, claim, cause of action, damage, liability, expense or cost of any kind, to the extent in excess of Twenty-Five Thousand Dollars ($25,000), incurred by the indemnified party as the result of a breach of any representation or warranty of the indemnifying party, or the failure of the indemnifying party to perform any covenant or obligation of this Agreement.

## ARTICLE XII.  MISCELLANEOUS PROVISIONS

12.1    Notice.  All notices, requests, demands and other communications required or permitted under the Agreement shall be made in writing and shall be deemed to have been duly given and made when received.

If to the Seller:

Robert Goldberg, Chief Executive Officer
AmFin Insurance Agency, Inc.
25700 Science Park Drive, Suite 365
Beachwood, OH  44122-7312
(216) 869-9418

13

with a copy to:

G. Christopher Meyer
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, OH 44114-1304
(216) 479-8692

If to the Buyer:

Ryan Novak
Novak Insurance Agency, Inc.
29500 Aurora Rd., Suite 8
Solon, Ohio, 44139
(440) 349-2120

with a copy to:

Robert J. Dubyak
Webster Dubyak & Weyls Co., LPA
1220 W. 6th Street, Suite 600
Cleveland, Ohio  44113
(216) 566-1144

provided, however, that if any party shall have designated a different address by notice to the

other, then to the last address so designated.

12.2    <u>Entire Agreement</u>.  This Agreement and the Exhibits attached hereto and the

documents expressly referred to herein embody the entire agreement and understanding of

the parties hereto with respect to the subject matter hereof and supersede all prior and

contemporaneous letters, agreements and understandings relative to said subject matter.

12.3    <u>Binding Effect: Assignment</u>.  This Agreement and the various rights and

obligations arising hereunder shall inure to the benefit of and be binding upon Buyer and Seller

and their respective legal representatives, successors and assigns; provided, however, that

14

neither party may assign this Agreement or any rights hereunder without the written consent of the other.

12.4 <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

12.5 <u>Waiver; Consent</u>. Whenever the consent, approval, agreement, waiver, designation, notice, demand or other written action by Buyer or Seller is provided for in this Agreement, the same may be given, in writing, on behalf of Seller by its President or its Secretary/Treasurer and on behalf of Buyer by its President. No waiver by any party of any condition of this Agreement or waiver of any breach by the other party of any of its obligations or representations hereunder shall be deemed to be a waiver of any other condition or subsequent breach of the same or any other obligation or representation by the other party, nor shall any forbearance by the first party to seek a remedy for any noncompliance or breach by the other party be deemed to be a waiver by the first party of its rights and remedies with respect to such noncompliance or breach.

12.6 <u>Other and Further Covenants of Seller</u>. At any time, and from time to time, including, without limitation, after the Closing, and without further consideration, Seller will execute and deliver such other and further instruments of conveyance, transfer and confirmation as Buyer may reasonably request in order more effectively to convey, confirm and transfer to Buyer any of the Purchased Assets.

15

12.7    <u>Governing Law</u>. This Agreement shall be construed in accordance with and

governed by the laws of the State of Ohio.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be duly

executed in their respective corporate names and by their respective duly authorized officers,

all as of the date and year first above written.

AMTRUST INSURANCE AGENCY, INC., Seller
As Debtor and Debtor in Possession

By:    _____

Robert Goldberg, Chief Executive Officer

NOVAK INSURANCE AGENCY, INC., Buyer

By:    _____

16

12.7   Governing Law.  This Agreement shall be construed in accordance with and governed by the laws of the State of Ohio.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be duly executed in their respective corporate names and by their respective duly authorized officers, all as of the date and year first above written.

AMTRUST INSURANCE AGENCY, INC., Seller
As Debtor and Debtor in Possession


By:   _____


NOVAK INSURANCE AGENCY, INC., Buyer


By:   _Ryan Novak_____ 1/27/2010

16

## EXHIBITS

A.     Machinery and Equipment                              (1.1a)

B.     Financial Information                                (5.3)

C      Defects in Title to Personal Property               (5.4)

17

**EXHIBIT 1.1(a)**

**Machinery and Equipment**

**[TO COME]**

18

**EXHIBIT 5.3**

**Financial Information**

1.  2009 premium and loss data for Travelers, Ohio Casualty & Safeco and Progressive, provided by email on January 13, 2010.

2.  Book of business data, by producer, carrier and line, provided by email on January 12, 2010.

3.  New business by producer, carrier and line, provided by email on January 12, 2010.

4.  Contingency check details for Met, Ohio Casualty and Travelers, provided by email on January 6, 2010.

5.  Personal lines book of business data, by line and state, provided by email on January 6, 2010.

6.  Premium trend and experience date for Ohio Casualty & Safeco, provided by email on December 22, 2009.

7.  Carrier information for Lloyds, Colorado Casualty, Farmers, Encompass, Met, Ohio Casualty, Progressive, Safeco and Travelers, provided by email on December 22, 2009.

## EXHIBIT 5.4

## Personal Property Title

1.      Liens on the assets of AIAI are asserted by the holders of the 11.78% senior notes due October 20, 2012, issued by AmTrust Financial Corporation and guaranteed and secured by AIAI and other affiliates.

2.      Certain assets utilized by AIAI may be owned by, or in common with, AmTrust Investment Securities, Inc., an affiliate.

20

**EXHIBIT B**

**SALE PROCEDURES ORDER**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **AMTRUST FINANCIAL CORPORATION,** *et al.*,[4] | ) | **Case No. 09-21323** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Judge Pat Morgenstern-Clarren** |
| | ) | |
| | ) | |

**ORDER (A) ESTABLISHING SALE PROCEDURES, (B) AUTHORIZING**
**PAYMENT OF A BREAK-UP FEE, (C) SCHEDULING A SALE HEARING,**
**AND (D) APPROVING SALE NOTICE PROCEDURES**

This matter having come before the Court on the Motion of the Debtors for an Order

(A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to

Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and

Clear of Liens, Claims, Interests, and Encumbrances, (C) Exempting the Sale From Transfer

---

[4] The Debtors include AmTrust Financial Corporation (Case No. 09-21323), AmTrust Insurance Agency, Inc. (Case No. 09-21325), AmTrust Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Properties, Inc. (Case No. 09-21329), AmTrust Investments, Inc. (Case No. 09-21331) and AmTrust Management, Inc. (Case No. 09-21332).

Taxes, (D) Waiving the Rule 6004(g) 10 Day Stay, And (E) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement, filed on January 29, 2010, and Amended Motion of the Debtors for an Order (A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Waiving the Rule 6004(h) 14 Day Stay, And (D) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement (the "Sale Motion"), filed by the above-captioned Debtors (the "Debtors") on February 5, 2010, Docket No. ___.  Unless otherwise defined herein, capitalized terms in this order (the "Sale Procedures Order") shall be given the same meaning accorded to such terms in the Sale Motion.  The Court having reviewed the Sale Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on February 11, 2010 (the "Hearing"); the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. § 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (d) notice of the Sale Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Sale Motion related to the proposed Sale Procedures is necessary and essential for the Debtors' reorganization and that such relief is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.       The portion of the Sale Motion related to Sale Procedures is GRANTED.

2.       The Timeline, is approved:

| | |
|---|---|
| ➤ Sale Motion (this Motion) filed | January 29, 2010 |
| ➤ Objection deadline for Sale Procedures portion of the Sale Motion | February 9, 2010 |

~18~

| | |
|---|---|
| ➢ Hearing on Sale Procedures portion of the Sale Motion | February 11, 2010 |
| ➢ Deadline for competing bids | February 19, 2010, 5pm ET |
| ➢ Auction (10:00am ET) and objections to the Sale Motion (4:00pm ET) | February 22, 2010 |
| ➢ Hearing on remainder of Sale Motion | February 23, 2010 |

3.  The Sale Procedures shall require an initial topping bid of $50,000.

4.  Novak shall receive a breakup fee of $25,000 to be paid at the time of the closing of the sale with a third party buyer, if any.

5.  The Form of Sale Notice is hereby approved.

6.  Within three (3) business days after the entry of this Sale Procedures Order, the Debtors shall serve (except with respect to those parties receiving electronic notice in the Debtors' bankruptcy proceeding) the Sale Notice, substantially in the form annexed hereto as Exhibit 2 on the following entities: (i) any parties that may have been previously contacted by the Debtors or their advisors in connection with the marketing and sale process for the Assets; (ii) all other prospective offerors and parties-in-interest previously known to the Debtors or upon written request to the Debtors by any other prospective offerors and parties-in-interest; and (iii) all parties pursuant to Bankruptcy Rules 2002, 6004(a), 6004(c), 6006(c) and 9014. Such parties shall include all parties holding a security interest in the Debtors' property pursuant to all lien searches in every state where the AIAI is incorporated and where any collateral is located, all taxing authorities (federal, state, local) in all jurisdictions where the AIAI conducts operations, the United States Trustee's Office for the Northern District of Ohio, any and all committees appointed in this bankruptcy case, the District Director of Internal Revenue for the district in which the case is pending, the United States attorney for the district in which the case is pending, and all creditors that filed a notice of appearance or a claim in the bankruptcy case. Service pursuant to Bankruptcy Rules 2002, 6004(a), 6004(c), 6006(c) and 9014 on those parties not receiving electronic notice shall be by first-class mail addressed to the business address of such persons appearing in the Debtors' records notwithstanding Bankruptcy Rule 9014. Pursuant to Bankruptcy Rule 2002, service of the Sale Notice described herein shall constitute good and sufficient notice of the Sale Procedures, the Auction, this Sale Procedures Order, the Sale Motion, the Sale Hearing (and any proceedings to be held thereon or related thereto) and the fundamental terms of the transaction among the Debtors and the Buyer on all known and unknown creditors and parties in interest, including persons entitled to service pursuant to Bankruptcy Rules 2002, 6004(a), 6004(c), 6006(c) and 9014.

###

Prepared by:

 _/s/ G. Christopher Meyer_____
G. Christopher Meyer  (Ohio 0016268)
Christine M. Pierpont  (Ohio 0051286)
Sherri L. Dahl (Ohio 0073621)
127 Public Square, Suite 4900
Cleveland, Ohio 44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
E-mail:  CMeyer@ssd.com
E-mail:  CPierpont@ssd.com
E-mail:  SDahl@ssd.com

And

Stephen D. Lerner (Ohio 0051284)
221 E. Fourth Street, Suite 2900
Cincinnati, OH  45202
Telephone:  (513) 361-1200
Facsimile:  (513) 361-1201
E-mail:  SLerner@ssd.com

COUNSEL FOR DEBTORS

~20~

# EXHIBIT 1

## SALE PROCEDURES

## SALE PROCEDURES

Each potential bidder must deliver to the Debtors:  (1) an executed confidentiality agreement; (2) current audited financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holder(s) of the potential bidder who will guarantee the obligations of the potential bidder, or such form of satisfactory evidence of committed financing or other ability to perform acceptable to the Debtors; (3) an executed proposed asset purchase agreement with higher or better terms than the terms and conditions of the Agreement,  and (4) a deposit in the amount of $50,000.

## Auction Participation and Qualified Bids

Only the Buyer and the "Qualified Bidder(s)" may participate in the Auction.  To become a Qualified Bidder, a party must deliver, on or before 5:00 p.m. Eastern Time on February 19, 2010 to the Debtors' counsel, G. Christopher Meyer, cmeyer@ssd.com; the Buyer's counsel, Richard Baumgart, rbaumgart@dsb-law.com; and counsel for the Official Committee of Unsecured Creditors (the "Committee"), Daniel A. DeMarco, dad@hahnlaw.com., the following items (the "Bid Package"):

a)      A written offer to purchase the Assets;

b)      An executed asset purchase agreement ("APA") in compliance with the requirements of applicable orders of the Bankruptcy Court.  The APA should have higher or better terms than the Agreement, and the potential bidder should provide a marked agreement reflecting the variations from the Agreement.  The proposed bid must be an all cash transaction (except for assumed liabilities);

c)      Evidence sufficient to the Debtors in their reasonable discretion that such bidder has the financial ability to consummate the Sale (including, without limitation, the ability to pay or perform the obligations to be assumed by the Buyer under the Agreement) in accordance with these Sale Procedures, which evidence may include, without limitation, current audited financial statements of the (A) Qualified Bidder or (B) if the Qualified Bidder is an

entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the Qualified Bidder, sources of equity or debt financing for payment of the purchase price, copies of commitment letters, the identity of contact persons at the financial institutions issuing the commitment letters or such other form of financial disclosure and credit-quality support information or enhancement reasonably acceptable to the Debtors and their advisors;

d)      A cash deposit (the "Good Faith Deposit") provided to the Debtors equal to at least $50,000. The Good Faith Deposit must be made by certified check or wire transfer and shall be held by the Debtors' counsel. The Good Faith Deposit shall be refunded unless the party that submitted the Deposit is the successful bidder at the Auction, the Sale is approved by the Court and the successful bidder then fails to close on the purchase of the Assets;

e)      A statement that the bid constitutes a binding offer to purchase the Assets that will remain in effect through 5:00 p.m. Eastern. on the 15th day following the Sale Hearing (defined below);

f)      Evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of the agreement; and

g)      A statement of every executory contract, the assumption and assignment of which is a condition to closing.

Bidders providing a Bid Package will be deemed a "Qualified Bid."

A Qualified Bid must be fully financed and may not have a financing contingency or be subject to any due diligence or other contingency whatsoever, except for approval by the Bankruptcy Court.

**<u>Due Diligence</u>**

The Debtors will facilitate due diligence investigations. Information related to the Assets will be available for review at Debtors' offices at 25700 Science Park Drive, Suite 365, Beachwood, OH  44122-7312.

~23~

## The Debtors' Pre-Auction Determinations

Prior to the auction, the Debtors will use their discretion to determine whether any potential bidder satisfies the auction participation and Qualified Bid criteria. The Debtors will determine whether the requirements for Qualified Bidder and Qualified Bid status have been met and the Debtors will negotiate bid terms with Qualified Bidders. In addition, the Debtors will make such other determinations as are necessary to implement the Bid Procedures.

## The Auction

If the Debtors receive a Qualified Bid in addition to the Buyer's bid, then the Debtors will hold an auction of the Assets (the "Auction"). If no Qualified Bids are submitted, then the Debtors will not hold the Auction, and will instead seek approval of the Agreement at a sale hearing (the "Sale Hearing").

The Debtors propose that the Auction, if any, will commence on February 22, 2010 at 10:00 a.m. Eastern Time at the Cleveland office of Squire Sanders and Dempsey, L.L.P. All bidders must appear in person or through a duly authorized representative. The Auction will commence with an initial bid that must be at least $50,000 in excess of the consideration provided for in the Agreement. Subsequent bids will be in increments of at least $25,000.

### (a)     The Debtors Will Choose the Successful Bidder

The Debtors will evaluate and compare the bids and determine in their business judgment the highest or best offer (the "Successful Bidder"). In no event will the Debtors determine that a bid is the highest when it does not exceed the value of the consideration offered by the Buyer in the Agreement by a minimum of $25,000.

~24~

**(b)** **Break-Up Fee**

41.     If the Buyer is not the Successful Bidder, then it will be paid a break-up fee (the "Break-Up Fee") of $25,000 as set forth in the Agreement.  The Break-Up Fee constitutes a fair and reasonable exercise of the Debtors' business judgment and is fair, reasonable and is a good faith estimate of the Buyer's internal and out of pocket costs, and is in the best interests of the Debtors' estates and their creditors.  If the Buyer is the Successful Bidder, after the Auction where at least one competing bid was made so that the Buyer increased its initial purchase price by at least $50,000, the successful bid price paid to the Debtor by the Buyer will be reduced by the $25,000 Break-Up Fee.

**The Debtors May Alter the Bidding Procedures**

The Debtors reserve the right to alter the Sale Procedures upon consent of the Buyer, which consent shall not be unreasonably withheld, as dictated by the circumstances of the Auction, if they believe it is necessary to obtain the highest and best value of their estates; provided however, that the Debtors will not alter any provision related to the Good Faith Deposit, or the Break-Up Fee.

**Good Faith Deposit**

The Good Faith Deposit submitted by each Qualified Bidder that is not the Successful Bidder will be returned to such party within five business days following the closing (the "Closing").

At Closing the Successful Bidder will be entitled to a credit for the amount of the Good Faith Deposit.

**Terms of the Sale**

Except as otherwise provided for in the agreement, submitted by the Successful Bidder, as applicable, the Auction will be without representations or warranties of any kind, nature or description by the Debtors, its agents, or it estates.

All of the Debtors' right, title and interest in and to the Assets will be transferred free and clear of all liens, claims, interests or encumbrances, if any. Any such liens, claims, interests, and encumbrances will attach to the proceeds from the Sale.

## EXHIBIT 2

**NOTICE OF MOTION**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | **Chapter 11** |
| | ) | |
| **AMTRUST FINANCIAL CORPORATION,** *et al.*,[1] | ) | **Case No. 09-21323** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Judge Pat Morgenstern-Clarren** |
| | ) | |
| | ) | |

## NOTICE OF SALE MOTION, HEARING, AUCTION AND
## BIDDING PROCEDURES FOR SALE OF ASSETS OF THE DEBTORS

**PLEASE TAKE NOTICE THAT** the above-captioned debtors propose to sell a portion of their assets to Novak Insurance Agency in a transaction more fully described in the Sale Motion (defined below), Docket No. __.

**NOTICE IS FURTHER HEREBY GIVEN THAT** on January 29, 2010, the above captioned debtors and debtors in possession (the "Debtors") filed the Motion of the Debtors for an Order (A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to Enter Into an Agreement for the Sale of its Assets To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Exempting the Sale From Transfer Taxes, (D) Waiving the Rule 6004(g) 10 Day Stay, And (E) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement, and on February 5, 2010, the Debtors filed the Amended Motion of the Debtors for an Order (A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Waiving the Rule 6004(h) 14 Day Stay, And (D) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement (the "Sale Motion").

**NOTICE IS FURTHER HEREBY GIVEN THAT** on _____, the United States Bankruptcy Court for the Northern District of Ohio (the "Court") entered an order, Docket No. ____ (the "Sale Procedures Order"). The Sale Procedures Order approves certain bidding and auction procedures (the "Sale Procedures") pursuant to which the Debtors will review competing bids and seek authority to sell a portion of their assets (the "Assets"), and approves certain buyer protections in connection with the sale of the Assets (the "Sale") that are the subject of the Sale

---

[1] The Debtors include AmTrust Financial Corporation (Case No. 09-21323), AmTrust Insurance Agency, Inc. (Case No. 09-21325), AmTrust Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Properties, Inc. (Case No. 09-21329), AmTrust Investments, Inc. (Case No. 09-21331) and AmTrust Management, Inc. (Case No. 09-21332).

Motion. Capitalized terms that are not defined in this Notice shall have the same meaning as set forth in the Sale Motion.

**NOTICE IS FURTHER HEREBY GIVEN THAT** copies of the Sale Motion and the Sale Procedures Order are on file with the Clerk of the Court and may be viewed on-line at https://ecf.ohnb.uscourts.gov, www.kccllc.net/AmTrust, or obtained by contacting G. Christopher Meyer, Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114, cmeyer@ssd.com.

**NOTICE IS FURTHER HEREBY GIVEN THAT** any party seeking to submit a bid and become a Qualified Bidder must submit such bid in conformity with the Sale Procedures and deliver it to the following parties no later than **February 19, 2010, 5:00 p.m. Eastern Time**: (i) counsel for the Debtors, G. Christopher Meyer, Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114, cmeyer@ssd.com, (ii) counsel for the Buyer, Richard A. Baumgart, Dettelbach, Sicherman and Baumgart, 1100 AmTrust Bank Center, 1801 E. 9th Street, Cleveland, OH 44114-3169 rbaumgart@dsb-law.com and (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Daniel A. DeMarco, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, OH 44114, dad@hahnlaw.com.

**NOTICE IS FURTHER HEREBY GIVEN THAT** the Auction contemplated by the Sale Procedures is scheduled for **February 22, 2010 at 10:00 a.m. Eastern Time** at Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114.

**NOTICE IS FURTHER HEREBY GIVEN THAT** the Sale Procedures, including instructions for submission of Qualified Bids, govern participation in the Auction and can be obtained from the website or entity set forth above.

**NOTICE IS FURTHER HEREBY GIVEN THAT** the hearing to consider approval of the Sale Motion and the Sale of the Assets to the bidder submitting the highest or best offer thereto at the Auction shall be held on **February 23, 2010 at _____m. Eastern Time** (the "Sale Hearing"), at the United States Bankruptcy Court for the Northern District of Ohio, Howard M. Metzenbaum U.S. Courthouse, 201 Superior Avenue, Cleveland, Ohio 44114. Objections to the Sale Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules and orders of this Court, shall set forth (i) the nature of the objector's claims against or interests in the Debtors' estates; (ii) the basis for the objection, (iii) the specific grounds therefor, and (iv) all evidence in support of said objection, and shall be filed and served so as to be received on or before **February 22, 2010, at 4:00pm ET**, by (i) counsel for the Debtors, G. Christopher Meyer, Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114, cmeyer@ssd.com, (ii) counsel for the Buyer, Richard A. Baumgart, Dettelbach, Sicherman and Baumgart, 1100 AmTrust Bank Center, 1801 E. 9th Street, Cleveland, OH 44114-3169 rbaumgart@dsb-law.com and (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Daniel A. DeMarco, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, OH 44114, dad@hahnlaw.com and (iv) all parties requesting service of notice and other pleadings in this chapter 11 case. Any person that does not comply with this paragraph shall not be heard at the Sale Hearing. If the Buyer or any Successful Bidder objects to the Debtors' determination of a Qualified Bid as a higher or better bid for the Assets,

09-21323-pmc    Doc 214    FILED 02/05/10    ENTERED 02/05/10 22:30:42    Page 50 of 55

the sole and exclusive remedy of such Qualified Bidder shall be to bid under protest at the Auction and, upon compliance with this paragraph, have standing at the Sale Hearing to contest the Debtors' determination.

      **NOTICE IS FURTHER HEREBY GIVEN THAT** any inquiries regarding information contained in this Notice should be directed to G. Christopher Meyer, Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114, (216)479-8500 cmeyer@ssd.com.

Dated:   February __, 2010          Respectfully submitted,
                                     SQUIRE, SANDERS & DEMPSEY L.L.P.

                                     */s/*_____
                                     G. Christopher Meyer  (Ohio 0016268)
                                     Christine M. Pierpont  (Ohio 0051286)
                                     Sherri L. Dahl (Ohio 0073621)
                                     127 Public Square, Suite 4900
                                     Cleveland, Ohio 44114-1304
                                     Telephone: (216) 479-8500
                                     Facsimile: (216) 479-8780
                                     E-mail:  CMeyer@ssd.com
                                     E-mail:  CPierpont@ssd.com
                                     E-mail:  SDahl@ssd.com

                                     And

                                     Stephen D. Lerner (Ohio 0051284)
                                     221 E. Fourth Street, Suite 2900
                                     Cincinnati, OH  45202
                                     Telephone:  (513) 361-1200
                                     Facsimile:  (513) 361-1201
                                     E-mail:  SLerner@ssd.com

                                     COUNSEL FOR DEBTORS

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **AMTRUST FINANCIAL CORPORATION,** *et al.,*[1] | ) | **Case No. 09-21323** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Judge Pat Morgenstern-Clarren** |
| | ) | |
| | ) | |

**ORDER (A) AUTHORIZING AMTRUST INSURANCE AGENCY, INC. TO ENTER
INTO AN AGREEMENT FOR THE SALE OF ITS ASSETS TO NOVAK INSURANCE
AGENCY, INC. FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, (B) WAIVING THE RULE 6004(h) 14 DAY STAY, AND
(C) WAIVING THE LOCAL BANKRUPTCY
RULE 9013-2 MEMORANDUM REQUIREMENT**

This matter having come before the Court on the Motion of the Debtors for an Order

(A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to

---

[1] The Debtors include AmTrust Financial Corporation (Case No. 09-21323), AmTrust Insurance Agency, Inc. (Case No. 09-21325), AmTrust Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Properties, Inc. (Case No. 09-21329), AmTrust Investments, Inc. (Case No. 09-21331) and AmTrust Management, Inc. (Case No. 09-21332).

Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Exempting the Sale From Transfer Taxes, (D) Waiving the Rule 6004(g) 10 Day Stay, And (E) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement, filed on January 29, 2010, and the Amended Motion of the Debtors for an Order (A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Waiving the Rule 6004(h) 14 Day Stay, And (D) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement (the "Sale Motion"), filed by the above-captioned Debtors (the "Debtors") on February 5, 2010, Docket No. ___.  Unless otherwise defined herein, capitalized terms in this order (the "Sale Order") shall be given the same meaning accorded to such terms in the Sale Motion. The Court has considered the entire record in these proceedings to date and the arguments presented by counsel for the various parties reflected in the record at the hearing, held on _____.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the foregoing, and after due deliberation and good sufficient factual and legal cause appearing therefore, the Court finds and concludes as follows:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.      The statutory predicates for relief sought herein include sections 105(a), 363, 365 and 1146(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001(d), 6004, 6006, 9013 and 9014 and Local Rule 9013.

E.      The Debtors have diligently negotiated with the Buyer for the purchase of the Assets.

F.      The Debtors have entered into an asset purchase agreement ("Agreement") with the Buyer for the purchase and sale of the Assets for an estimated purchase price of $450,000 (the "Purchase Price").

G.      Time is of the essence with respect to the Sale.

H.      The Debtors have filed the Agreement with the Court. The Agreement provides the terms of the transaction between the Buyer and the AIAI and, therefore, the Agreement provides parties-in-interest with good and sufficient notice of the structure and nature of the contemplated transaction.

I.      The Buyer shall be entitled, as provided in the Agreement, to a break-up fee equal to $25,000 (the "Break-Up Fee"). The Break-Up Fee constitutes a fair and reasonable exercise of the Debtors' business judgment and is fair, reasonable and is a good faith estimate of Buyer's internal and out of pocket costs, and is in the best interests of the Debtors' estates and their creditors.

J.      With respect to the Sale Motion and all matters addressed in this Sale Order, due and proper notice has been given to all necessary parties, as listed herein.

K.      The Debtor has good and sufficient business reasons for the relief requested in the Sale Motion and has exercised prudent and reasonable business judgment with respect thereto.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**

        1.      The remainder of the Sale Motion is GRANTED.

###

Prepared by:

 _/s/ G. Christopher Meyer_____
G. Christopher Meyer  (Ohio 0016268)
Christine M. Pierpont  (Ohio 0051286)
Sherri L. Dahl (Ohio 0073621)
127 Public Square, Suite 4900
Cleveland, Ohio 44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
E-mail:  CMeyer@ssd.com
E-mail:  CPierpont@ssd.com
E-mail:  SDahl@ssd.com

And

Stephen D. Lerner (Ohio 0051284)
221 E. Fourth Street, Suite 2900
Cincinnati, OH  45202
Telephone:  (513) 361-1200
Facsimile:  (513) 361-1201
E-mail:  SLerner@ssd.com

COUNSEL FOR DEBTORS