UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMTRUST FINANCIAL CORPORATION, | ) | Case No. 09-21323 |
| *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Pat Morgenstern-Clarren |

**NOTICE OF FILING OF AMENDED ASSET PURCHASE AGREEMENT**

Debtors, through counsel, hereby notify the Court and parties in interest of the filing of the attached Amended Asset Purchase Agreement pertaining to the Amended Motion of the Debtors for an Order (A) Approving the Proposed Sale Process, (B) Authorizing AmTrust Insurance Agency, Inc. to Enter Into an Agreement for the Sale of its Assets of To Novak Insurance Agency, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Waiving the Rule 6004(h) 14 Day Stay, And (D) Waiving the Local Bankruptcy Rule 9013-2 Memorandum Requirement (the "Sale Motion"). [Docket No. 214].

Dated:  February 23, 2010          Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

*/s/ G. Christopher Meyer* _____

G. Christopher Meyer  (Ohio 0016268)
Sherri L. Dahl (Ohio 0073621)
4900 Key Tower, 127 Public Square
Cleveland, Ohio 44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
E-mail:  CMeyer@ssd.com
E-mail:  SDahl@ssd.com

---

[1]        The Debtors include AmTrust Financial Corporation (Case No. 09-21323), AmTrust Insurance Agency, Inc. (Case No. 09-21325), AmTrust Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Properties, Inc. (Case No. 09-21329), AmTrust Investments, Inc. (Case No. 09-21331) and AmTrust Management, Inc. (Case No. 09-21332).

And

Stephen D. Lerner (Ohio 0051284)
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
E-mail: SLerner@ssd.com

COUNSEL FOR THE DEBTORS

## AMENDED ASSET PURCHASE AGREEMENT

This AMENDED ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into this 22nd day of February, 2010, by and between AmTrust Insurance Agency, Inc., an Ohio corporation, with its principal place of business at 1801 East 9th St., Cleveland, Ohio in its capacity as debtor and debtor in possession in Case No. 09-21325 pending before the United States Bankruptcy Court for the Northern District of Ohio ("Seller") and Novak Insurance Agency, Inc., an Ohio corporation, with its principal place of business at 29500 Aurora Rd., Suite 8, Solon, Ohio, 44139 ("Buyer").

## W I T N E S S E T H:

WHEREAS, Seller operates an insurance agency business providing for the sale of property and casualty insurance (the "Business"):

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller, substantially all of the assets of the Business, upon the terms and conditions hereinafter set forth;

WHEREAS, on November 30, 2009, Seller filed a petition for relief under Chapter 11 of title 11 of the U. S. Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"), commencing Case No. 09-12325 on the docket of the Bankruptcy Court (the "Case") and was thereafter continued in the possession and operation of its business; the Case being jointly administered with Case No. 09-21323;

WHEREAS, Seller and Buyer entered in an Asset Purchase Agreement dated January 29, 2010 (the "Original Agreement"), which provided, subject to Seller's receipt of higher and better offers, for the sale of the Business to Buyer;

WHEREAS, Seller filed the necessary pleadings and notices to obtain approval from the Bankruptcy Court for the procedures to be used to consider Buyer's offer to purchase the Business pursuant to the Agreement;

WHEREAS, Seller received a competing offer for purchase of the Business and conducted an auction as contemplated by the procedures approved by the Bankruptcy Court and, in conjunction with such auction, Buyer and Seller have agreed to certain amendments to the Original Agreement, as reflected in this Agreement;

WHEREAS, Seller has deemed that Buyer's revised offer as set forth herein is the best offer for the purchase of the Business and Seller will seek an Order of the Bankruptcy Court, unconditionally approving this Agreement and the transactions contemplated by the Agreement; and

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties hereto agree as follows:

## ARTICLE I.  PURCHASE AND SALE OF ASSETS

1.1  <u>Description of Assets</u>.  Upon the terms and subject to the conditions set forth in this Agreement, Seller shall convey, sell, assign and transfer, free and clear of all liens, claims and encumbrances, and Buyer shall purchase, at the Closing (as such term is hereinafter defined), the following described assets, in each instance to the extent owned by Seller and used in the Business (the "Purchased Assets"):

a. All machinery and equipment of the Business wherever located, including but not limited to all paper files, file cabinets, workstations and the computers of all customer service representatives and/or salespersons, all as listed on <u>Exhibit 1.1(a)</u> hereto.

b. All the Seller's right, title and interest in and to all contracts and agreements of property and casualty insurance, including any and all agency contracts between Seller and various insurance companies, including but not limited to the Travelers, Ohio Casualty, Safeco, MetLife, Encompass, Unitrin, Victoria and Foremost entities.

c. All financial, tax and other records of Seller pertaining exclusively to the Business, provided that each party shall have reasonable access to all Seller's records to the extent needed for the filing of tax returns or other business purposes following the Closing.

d. All intellectual property owned by Seller, including but not limited to Seller's rights to telephone numbers, facsimile numbers, e-mail addresses and the like used in connection with the Business and including any rights of Seller to use the name "AmTrust Insurance Agency, Inc.."  At the time of Closing, Seller shall use its best efforts to cause the e-mails directed to Seller with respect to the Business to be forwarded to an email address as directed by Buyer and shall thereafter immediately restrict access of Seller and its employees to such email.  If ownership and control of the telephone/fax numbers listed on Exhibit 1.1(a) cannot be transferred to Buyer, then Seller agrees to use its reasonable efforts to cause such telephone/fax numbers to be forwarded to Buyer for a period of up to one (1) year.

e. All client lists, referral source lists, contact lists, client records relating to the Business, and rights to clients of the Business, including work in process, quotes and any active leads, including leads forwarded to Seller after Closing.

f. All office supplies owned by Seller and now or previously used in the operation of the Business and all of Seller's business forms and business records for the Business including letterhead and stationery.

g. All of Seller's goodwill and other intangible assets of the Business.

h. All of Seller's contractual and other rights to Business personnel, Business suppliers, and other contracts of the Business, to the extent desired by Buyer.

i. All of Seller's other assets used in the day to day operation of the Business, including all accounts receivable and earned commissions that would constitute a receivable of the Business as of the Closing, except as provided in paragraph 1.2 below.

j. All renewals and rights to renewals relating to the Business from the insurance companies with which Seller does business.

k. All of Seller's (i) computer software, (ii) historical accounting and sales data, (iii) customer lists, supplier's lists, sales literature, art work, display booths and units, (iv) other marketing materials, and (v) other business records, in each case to the extent owned by Seller and used exclusively in the Business.

1.2    Excluded Assets.    Notwithstanding Section 1.1 above the following assets (collectively, the "Excluded Assets") shall not constitute Purchased Assets and shall be retained by Seller following the Closing: (i) all cash; (ii) to the extent not expressly assumed by Seller and assigned to Buyer in writing pursuant to Section 365 of the Bankruptcy Code, all executory contracts of Seller; (c) all Seller's right, title and interest in premiums or commissions payable to

Seller with respect to insurance policies sold or renewed by Seller prior to Closing and for which such premiums or commissions are required to be paid in full or to the extent of installments required to be paid, prior to Closing or; (d) all rights, claims and choses in action against third parties related to the assets, properties and rights of Seller or the conduct of the Business, in each instance, to the extent arising out of transactions prior to the Closing Date, including but not limited to any claim or cause of action under Chapter 5 of the Bankruptcy Code; and (e) Seller's assets used directly in the fixed annuity, variable annuity and life insurance portions of Seller's business.

1.3     <u>Employee Liability</u>.  Except as is specifically set forth herein, Buyer does not assume and will not be responsible for any liability of Seller.  For purposes of clarity and not by way of limitation, Buyer will not have any liability or responsibility for any liabilities or claims arising from Seller's relationship with its employees or former employees.


## <u>ARTICLE II.  PURCHASE PRICE</u>

2.1  <u>Consideration</u>.  In consideration for the sale and transfer of the Purchased Assets described in Section 1.1 above, Buyer shall pay Seller the sum of $625,000.00, less a credit in the amount of $25,000.00 for the Break Up Fee to which the Buyer is entitled under the approved bid procedures, thus resulting in a net cash consideration of $600,000.00.

2.2  <u>Method of Payment</u>.  At the Closing, Buyer shall pay to Seller the consideration described in Section 2.1 as follows by bank check or otherwise immediately available funds delivered on the Closing Date.

## ARTICLE III.  AGREEMENTS BETWEEN THE PARTIES

3.1  <u>Sales Taxes</u>.  Seller shall pay any sales or transfer taxes that may be due on account of the sale of the Purchased Assets.

3.2  <u>Covenant Not to Compete</u>.  For a period of two (2) years from the Closing Date, neither Seller nor any affiliate of Seller shall, own or operate any business that competes directly or indirectly with the Business, provided however, that Seller, AmTrust Investment Services, Inc. and OS Reinsurance Company shall continue to be permitted to operate any insurance business not involving property and casualty insurance.

## ARTICLE IV.  CLOSING

4.1  <u>The Closing</u>.  The transactions contemplated by this Agreement are to be closed, and all deliveries to be made at such time in connection therewith are to be made, at the offices of Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square., Cleveland, Ohio, at 10:00 A.M. on such date not later than March 15, 2010 as may be mutually agreed by the parties, provided that the Closing shall in any event be subject to satisfaction of all conditions set forth herein and take place within ten (10) days of satisfaction of all conditions set forth at Section 8.2 hereof, including specifically that set forth at Section 8.2(f) (said closing and the date herein referred to as the "Closing" and the "Closing Date", respectively).

## ARTICLE V.  REPRESENTATIONS OF SELLER

5.1  <u>Corporate Organization</u>.  Seller is a corporation duly organized, and validly existing under the laws of the State of Ohio.

5.2  <u>Authorization</u>.  The execution, delivery and performance of this Agreement and the other transactions contemplated hereby have been duly authorized by Seller, and, subject to

the satisfaction on the conditions contained herein, this Agreement is a valid and binding obligation of Seller.  Neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will (i) violate the Certificate of Incorporation or By-Laws of Seller, or (ii) result in the creation or imposition of any lien or encumbrance in favor of any third party  with respect to any of the Purchased Assets.

5.3  <u>Financial Information</u>.  The financial information relating to the Business that has been provided to Buyer as described in Exhibit 5.3 attached hereto was prepared from accounting records used in the preparation of Seller's financial statements and to the best of Seller's knowledge, is fairly presented in all material respects.

5.4  <u>Title to Personal Property</u>.  Except as otherwise set forth in Exhibit 5.4 attached hereto, the Seller has good title to the Purchased Assets and, upon the issuance by the Bankruptcy Court of the Order, will be able to transfer them to Buyer free and clear or all claims, mortgages, liens, charges, encumbrances whatsoever.

5.5  <u>Litigation</u>.  Subject to the Bankruptcy Court's entry of the Order, Seller is not aware of any pending or threatened litigation, which could reasonably be expected to affect Seller's ability to complete the transactions herein, including Seller's sale of the Purchased Assets. Other than the Bankruptcy Case, Seller is not aware of any litigation pending against it that is not subject to the automatic stay of Section 362 of the Bankruptcy Code.

5.6  <u>Brokerage or Finder's Fee</u>.  Seller has carried on all negotiations relating to this Agreement so as not to give rise to a claim against Buyer for a brokerage commission or finder's fee.

## ARTICLE VI.  REPRESENTATIONS OF BUYER

Buyer represents and warrants to Seller as follows:

6.1 <u>Corporate Organization</u>.  Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Ohio.

6.2 <u>Authorization</u>.  The execution, delivery and performance of this Agreement and the other transactions contemplated hereby have been duly authorized by Buyer and, subject to the satisfaction on the conditions contained herein,  this Agreement is a valid and binding obligation of.  Neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will violate the Certificate of Incorporation or By-Laws of Buyer, or any contract or commitment under which Buyer is a party or by which it may be bound.

6.3 <u>Litigation</u>.  Subject to the Bankruptcy Court's entry of the Order, Buyer is not aware of any pending or threatened litigation, which could reasonably be expected to affect Buyer's ability to complete the transactions herein, including Buyer's purchase of the Purchased Assets.

6.3 <u>Brokerage or Finder's Fee</u>.  Buyer has carried on all negotiations relating to this Agreement so as not to give rise to a claim against Seller for a brokerage commission of finder's fee.

## ARTICLE VII.  COVENANTS OF SELLER

7.1 <u>Continued Operations</u>.  Between the date hereof and the Closing, Seller will use its best efforts to preserve its labor force and to assure the uninterrupted continuation of the Business operations in accordance with prior practices.

7.2  <u>Transition and Access to Information</u>.  Between the date hereof and the Closing, Seller shall (i) give to Buyer and to Buyer's lawyers, accountants, and other representatives reasonable access, during normal business hours, to the Buyer or its representatives and all of the properties, books, contracts, commitments and records applicable to the Business and (iii) furnish Buyer with any information concerning the Business as Buyer may reasonably request.  Seller agrees to maintain at Seller's sole expense, in good working order and with full access to Buyer for a period of not less than 30 days following Closing, EZ Links System and the TAM agency management software (the Applied Systems Software) to allow for Seller's transfer of all electronic files and data that comprise Purchased Assets.   During and the period prior to Closing, Buyer shall be given access to the employees of the Business for purposes of interviewing employees to determine which if any of Seller's employees Buyer may choose to subsequently hire.  Notwithstanding the foregoing, Buyer but shall not be obligated to hire any employees of Seller.

7.3  <u>Approval of Bankruptcy Court</u>.  Promptly after the execution of this Agreement, Seller will commence such proceedings and notify such parties as is necessary to obtain from the Bankruptcy Court the necessary Orders approving this Agreement and the transactions contemplated hereby (the "Order").  Seller will use its best efforts to pursue such proceedings and obtain the Order as soon as possible and in any event not later than February28, 2010.  The pleadings filed by Seller seeking approval of this Agreement, shall be reasonably acceptable to Buyer's counsel and shall be provided to Buyer's counsel at least 24 hours prior to filing for review.

## ARTICLE VIII.  CONDITIONS TO CLOSING

8.1  <u>Conditions to Seller's Obligation</u>.  The obligation of Seller to consummate the transactions contemplated by this Agreement is, at its option, subject to the following conditions:

(a)  <u>Representations and Warranties</u>.  Buyer's representations and warranties shall be true and correct as though made at the Closing.

(b)  <u>Performance</u>.  Buyer shall have performed and complied with all covenants, agreements, obligations and conditions on its part herein required to be performed or complied with at or before the Closing.

(c)  <u>Approval of the Bankruptcy Court</u>.  The Order shall have been entered and docketed and shall remain in full force and effect, and the period for appeals shall have run and no appeal from or challenge to the Order shall be pending.  Seller agrees to seek Bankruptcy Court approval for a waiver of any stay in order to permit immediate effectiveness of the Order.

(d)  <u>Pending Litigation</u>.  There shall not be any suit or administrative proceeding, brought by a third party, pending or threatened against Seller or Buyer seeking to enjoin Seller and Buyer from completing the transactions contemplated by this Agreement.

(e)  <u>Delivery of Closing Documents</u>.  Buyer shall have delivered at the Closing all of the documents described in Section 9.2 below.

8.2  <u>Conditions to Buyer's Obligations</u>.  The obligation of Buyer to consummate the transactions contemplated by this Agreement is, at its option, subject to the following conditions:

(a) <u>Representations and Warranties</u>.  Seller's representations and warranties shall be true and correct as though made at the Closing.

(b) <u>Performance</u>.  Seller shall have performed and complied with all covenants, agreements, obligations and commitments on its part herein required to be performed or complied with at or before the Closing.

(c) <u>Approval of the Bankruptcy Court</u>.  The Order shall have been entered and docketed and shall remain in full force and effect, and the period for appeals shall have run and no appeal from or challenge to the Order shall be pending.  Buyer agrees to cooperate with Seller's efforts to seek Bankruptcy Court approval for a waiver of any stay in order to permit immediate effectiveness of the Order.

(d) <u>Pending Litigation</u>.  There shall not be any suit or administrative proceeding, brought by a third party, pending or threatened against Seller or Buyer seeking to enjoin Seller and Buyer from completing the transactions contemplated by this Agreement.

(e) <u>Absence of Casualty</u>.  Between the date hereof and the Closing, there shall have been no material damage or destruction to the Purchased Assets; provided, however, that Buyer may, at its option, nevertheless close the transactions contemplated by this Agreement and, in that event, Seller shall assign to Buyer the proceeds of any insurance relating to the damaged or destroyed assets.  The complete risk of damage or destruction to property shall remain with Seller until Closing.

(f) <u>Delivery of Closing Documents</u>.  Seller shall have delivered at the Closing all of the documents described in.Section 9.1 below.

## ARTICLE IX.  DELIVERIES AT THE CLOSING

9.1  <u>Deliveries of Seller</u>.  At the Closing, Seller shall deliver or cause to be delivered to Buyer duly executed:

(a)  <u>Bill of Sale</u>.  A General Conveyance, Assignment and Bill of Sale in a form reasonably satisfactory to Buyer, conveying to Buyer the Purchased Assets (tangible and intangible) to be sold and transferred hereunder, free and clear of all mortgages, liens, charges and encumbrances.

(b)  <u>Specific Assignment</u>.  Specific assignments of any significant contracts, or orders transferred under Section 1.1, as Buyer may reasonably request to assure their continuity, together with any consents to such assignments that may be reasonably required.

(c)  <u>Other Instruments of Conveyance</u>.  Any such other instruments as counsel for Buyer may reasonably deem necessary or desirable to effect or evidence the transfers contemplated hereby.

(d) <u>Officer's Certificate</u>.  A Certificate signed by the President and by the General Manager of Seller, dated the Closing Date, as to the truth of the Seller's representations and warranties at the Closing Date.

9.2     <u>Deliveries of Buyer</u>.  At the Closing, Buyer shall deliver or cause to be delivered to Seller, duly executed:

(a)     <u>Purchase Price</u>.  The funds described in Section 2.2 above.

(b)     <u>Officer's Certificate</u>.  A Certificate signed by the President of Buyer, dated the Closing Date, as to the truth of the Buyer's representations and warranties at the Closing Date.

## ARTICLE X.  POST CLOSING

10.1    <u>Removal of Purchased Assets</u>.  Buyer will remove the Purchased Assets from the Seller's business premises, at Buyer's expense, not later than thirty (30) days after the Closing. Buyer will be responsible for any damages to the such premises caused by Buyer, its employees or its agents in removing the Purchased Assets, but Buyer will not be responsible for any obligation of Seller with respect to its business premises.

10.2    <u>Transfer of E-mail and Electronic Files</u>.  Buyer shall cooperate in and promptly arrange for the transfer of all e-mails, email addresses, and electronic files included in the Purchased Assets to Buyer as set forth herein, including limiting access thereto in the future by Seller or its employees or agents.

10.3    <u>Enforcement of Agreements</u>.  From and after the Closing, Seller shall, upon request from Buyer and at Buyer's expense, take those actions requested by Buyer in order to enforce, for Buyer's benefit, the obligations contained in Section 3.1 of the Employment Agreements of (i) Sarah Limeer dated June 10, 2008, (ii) Bill Wolf dated June 13, 2008, and (iii) Dan Hodous dated October 23, 2008.

## ARTICLE XI.  INDEMNITY

11.1    Seller and Buyer each agree to hold harmless and indemnify the other and their legal representative, successors and assigns from and against any loss, claim, cause of action, damage, liability, expense or cost of any kind, to the extent in excess of Twenty-Five Thousand Dollars ($25,000), incurred by the indemnified party as the result of a breach of any representation or warranty of the indemnifying party, or the failure of the indemnifying party to perform any covenant or obligation of this Agreement.

**ARTICLE XII.  MISCELLANEOUS PROVISIONS**

12.1    Notice.  All notices, requests, demands and other communications required or permitted under the Agreement shall be made in writing and shall be deemed to have been duly given and made when received.

If to the Seller:

Robert Goldberg, Chief Executive Officer
AmFin Insurance Agency, Inc.
25700 Science Park Drive, Suite 365
Beachwood, OH  44122-7312
(216) 869-9418
with a copy to:

G. Christopher Meyer
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, OH 44114-1304
(216) 479-8692

If to the Buyer:

Ryan Novak
Novak Insurance Agency, Inc.
29500 Aurora Rd., Suite 8
Solon, Ohio, 44139
(440) 349-2120

with a copy to:

Robert J. Dubyak
Webster Dubyak & Weyls Co., LPA
1220 W. 6th Street, Suite 600
Cleveland, Ohio  44113
(216) 566-1144

provided, however, that if any party shall have designated a different address by notice to the other, then to the last address so designated.

12.2    <u>Entire Agreement</u>.  This Agreement and the Exhibits attached hereto and the documents expressly referred to herein embody the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous letters, agreements and understandings relative to said subject matter.

12.3    <u>Binding Effect: Assignment</u>.  This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon Buyer and Seller and their respective legal representatives, successors and assigns; provided, however, that neither party may assign this Agreement or any rights hereunder without the written consent of the other.

12.4    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

12.5  <u>Waiver; Consent</u>.  Whenever the consent, approval, agreement, waiver, designation, notice, demand or other written action by Buyer or Seller is provided for in this Agreement, the same may be given, in writing, on behalf of Seller by its President or its Secretary/Treasurer and on behalf of Buyer by its President.  No waiver by any party of any condition of this Agreement or waiver of any breach by the other party of any of its obligations or representations hereunder shall be deemed to be a waiver of any other condition or subsequent breach of the same or any other obligation or representation by the other party, nor shall any forbearance by the first party to seek a remedy for any noncompliance or breach by the other party be deemed to be a waiver by the first party of its rights and remedies with respect to such noncompliance or breach.

12.6    <u>Other and Further Covenants of Seller</u>.  At any time, and from time to time, including, without limitation, after the Closing, and without further consideration, Seller will execute and deliver such other and further instruments of conveyance, transfer and confirmation as Buyer may reasonably request in order more effectively to convey, confirm and transfer to Buyer any of the Purchased Assets.

12.7    <u>Governing Law</u>.  This Agreement shall be construed in accordance with and governed by the laws of the State of Ohio.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be duly executed in their respective corporate names and by their respective duly authorized officers, all as of the date and year first above written.

AMTRUST INSURANCE AGENCY, INC., Seller
As Debtor and Debtor in Possession


By:    _____


NOVAK INSURANCE AGENCY, INC., Buyer


By:    _____

**EXHIBITS**

A.      Machinery and Equipment        (1.1a)

B.      Financial Information        (5.3)

C      Defects in Title to Personal Property        (5.4)

**EXHIBIT 1.1(a)**

**Machinery and Equipment**

1 Dell computer with monitor, computer #OSB89V3Y81, ID #013886

1 set of polk audio speakers

1 Nortel Networks telephone with headset ID #006372

1 Fujitsu fi-5220C desktop scanner, ID #017124

1 Cannon laser class 2050p fax machine, ID #021782

1 stand alone desk with cubicle walls and hanging cabinets

1 desk chair

2 guest chairs

6 filing cabinets

Various office supplies contained within aforementioned desk

1 step stool

3 Dell laptop computers, OSBJRMTYDI, ID #022801 & OSB5YFNK91, ID #016375

Closed files stored at Iron Mountain

Telephone Numbers:  (216) 588-3829 and (216) 588-4371

Fax Number:          (216) 588-4277

Toll Free Number:    (800) 860-2025

**EXHIBIT 5.3**

**Financial Information**

1. 2009 premium and loss data for Travelers, Ohio Casualty & Safeco and Progressive.

2. Book of business data, by producer, carrier and line.

3. Personal lines book of business data, by line and state.

4. Premium trend and experience date for Ohio Casualty & Safeco, provided by email on December 22, 2009.

5. Carrier information for Colorado Casualty, Farmers, Encompass, Met, Ohio Casualty, Progressive, Safeco and Travelers.

**EXHIBIT 5.4**

**Personal Property Title**

1.    Liens on the assets of AIAI are asserted by the holders of the 11.78% senior notes due October 20, 2012, issued by AmTrust Financial Corporation and guaranteed and secured by AIAI and other affiliates.

2.    Certain assets utilized by AIAI may be owed by, or in common with, AmTrust Investment Securities, Inc., an affiliate.

20