UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMFIN FINANCIAL CORPORATION, *et al.*,[1] | ) Case No. 09-21323 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Judge Pat Morgenstern-Clarren |

**MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING PROPOSED SALE PROCEDURES, (B) AUTHORIZING AMFIN REAL ESTATE INVESTMENTS, INC. TO SELL CERTAIN ASSETS TO DOLLAR BANK, FEDERAL SAVINGS BANK FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF EXECUTORY CONTRACTS, (D) WAIVING THE BANKRUPTCY RULE 6004(h) 14-DAY STAY, AND (E) WAIVING THE LOCAL BANKRUPTCY RULE 9013-2 MEMORANDUM REQUIREMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move (the "Sale Motion") the Court for entry of an order (a) approving proposed sale procedures, (b) authorizing debtor AmFin Real Estate Investments, Inc. to perform a sale agreement,[2] for the sale (the "Sale") of certain assets to Dollar Bank, Federal Savings Bank (subject to receipt of higher and better offers), free and clear of liens, claims, interests, and encumbrances, pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), (c) approving the assumption and assignment or rejection of executory contracts, (d) waiving the Bankruptcy Rule 6004(h) 14-day stay, and (e) waiving the

---

[1] The Debtors are: AmTrust Financial Corporation nka AmFin Financial Corporation (Case No. 09-21323), AmTrust Real Estate Investments, Inc. nka AmFin Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Insurance Agency, Inc. nka AmFin Insurance Agency, Inc. (Case No. 09-09-21325), AmTrust Investments Inc. nka AmFin Investments Inc. (Case No. 09-21331), AmTrust Properties Inc. nka AmFin Properties Inc. (Case No. 09-21329) and AmTrust Management Inc. nka AmFin Management Inc. (Case No. 09-21332).

[2] The Agreement is attached hereto as Exhibit A.

Local Bankruptcy Rule 9013-2 memorandum requirement. In support of the foregoing, the Debtors respectfully represent as follows.[3]

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## II. BACKGROUND

2. On November 30, 2009 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By orders entered on December 4, 2009, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. *See* Docket No. 37.

3. AmFin Financial Corporation ("AFC") (f/k/a AmTrust Financial Corporation) is the direct or indirect corporate parent of each of the other Debtors and of certain non-debtor subsidiaries (collectively, the "Non-Debtor Subsidiaries", and individually, a "Non-Debtor Subsidiary"). AmTrust Bank and its subsidiaries are not debtors in these proceedings (collectively, the "Bank Entities").

4. Prior to the Petition Date, AFC's principal business consisted of acting as a holding company for AmTrust Bank, the Debtors, and the other Non-Debtor Subsidiaries (collectively, the "Companies", and individually, a "Company"). Under AmTrust Bank's charter, it was authorized to accept deposit accounts insured by the Federal Deposit Insurance Corporation ("FDIC") and to make consumer and business loans and certain related investments.

---

[3] Capitalized terms not defined herein shall have the respective meanings as defined in the Agreement.
- 2 -

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 2 of 16

AmTrust Bank and AFC, as its corporate parent, have both been subject to oversight and regulation by the Office of Thrift Supervision ("OTS").

5. Prior to the Petition Date, as of September 30, 2009, the Companies recorded annual net revenues of more than $419 million. As of October 31, 2009, the Companies had assets of approximately $11.7 billion and liabilities totaling $11.45 billion. As of the Petition Date, the Companies collectively had approximately 1700 employees.

6. Prior to the Petition Date, as of October 30, 2009, the Debtors' assets generally consisted of: (a) approximately $7.27 million in cash in various bank accounts; (b) interests in subsidiaries; (c) accounts receivable; (d) limited partnership, joint venture and other investment interests in real estate and other business entities; and (e) approximately $23.3 million (at book value) in fixed assets, including land, buildings, furniture and equipment.

7. As of September 2, 2009, AFC had outstanding indebtedness for borrowed money totaling approximately $169.5 million, consisting of: (a) $99.49 million attributable to 11.78% senior notes due October 20, 2012; (b) $51.55 million of principal indebtedness attributable to junior subordinated deferrable interest debentures issued pursuant to an Indenture dated June 3, 1997 and (c) obligations under a capital lease entered into in conjunction with municipal bond financing consisting of (i) $2,000,000 of tax incentive bonds known as the 2003 City of Cleveland Ohio Economic Development Revenue Bonds and (ii) $16,000,000 construction cost bonds known as the Cleveland-Cuyahoga County Port Authority Taxable Development Revenue Bonds, Series 2004 (OSF Properties, Inc. Project).

8. On December 4, 2009, the OTS closed AmTrust Bank and appointed the FDIC as receiver ("Receiver"). Pursuant to a Purchase and Assumption Agreement, dated December 4, 2009 (the "P&A"), New York Community Bank ("NYCB") acquired certain assets and assumed

certain liabilities of AmTrust Bank. The terms of the P&A did not include the acquisition of assets of debtor AREI.

9. Further facts regarding the Debtors, including their business operations, their assets and liabilities and the events leading to the filing of these chapter 11 cases, are set forth in detail in the Declaration of Peter Goldberg in Support of First-Day Pleadings. *See* Docket No. 3.

### III. REQUESTED RELIEF

10. Debtor AmFin Real Estate Investments, Inc. ("Seller") hereby seeks authority to sell certain assets and to assign certain agreements, both pertaining to its office building property located at 26949 Chagrin Blvd., Cuyahoga County, Ohio to Dollar Bank, Federal Savings Bank ("Purchaser"), subject to receipt of higher and better offers. Specifically, the Seller seeks authority to consummate and perform obligations included within the Real Estate Purchase Agreement attached hereto as Exhibit A (the "Agreement").

**A. Summary of Sale Terms**

11. Certain provisions of the Agreement and the Sale are summarized below. This summary is qualified by reference to the Agreement attached as Exhibit A for a more complete description of terms summarized herein.

**Description of Seller Property Included in Transfer**

12. Pursuant to the Agreement, Seller intends to transfer to the Purchaser (Purchaser and Seller collectively, the "Parties") and Purchaser intends to acquire the following assets owned by Seller (the "Property") at a closing anticipated promptly following the sale hearing (the "Closing"):

    A.    The land known as 26949 Chagrin Blvd., partly in the City of Beachwood and Partly in the Village of Woodmere, Cuyahoga County, Ohio, Permanent Parcel Nos. 891-04-001 and 742-29-006 (the "Land") (Legal Description of the Property is attached as Exhibit A to the Agreement);

- 4 -

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 4 of 16

- B. any and all buildings and other improvements located on the Land (collectively, the "<u>Improvements</u>");

- C. all easements, rights, privileges and appurtenances thereunto belonging, including all right, title and interest, if any of Seller in and to any land lying in the right-of-way of any street, highway or highway ramp in front of or adjoining the Land to the centerline thereof (collectively, the "<u>Easements and Appurtenances</u>");

- D. all certificates, licenses, permits, zoning variances, special or other use permits, authorizations, approvals, entitlements, grants of right, applications and consents owned or held by Seller in connection with the Land (collectively, the "<u>Intangible Property</u>");

- E. all of Seller's right, title and interest in all appliances, furniture, equipment, machinery, fixtures, carpet and other personal property, if any, located on or about the Land and Improvements, and any documents, drawings, records of operations and maintenance manuals for any such personal property or records of development of the Land or construction of the Improvements (collectively, the "<u>Personal Property</u>"); and

- F. all of Seller's right, title and interest, if any, in any leases and/or other contracts and agreements, including any modifications or amendments thereto, benefiting the Land and Improvements and approved by Purchaser, in Purchaser's sole and absolute discretion (collectively, the "<u>Contracts</u>").

**<u>Purchase Price</u>**

13. In consideration for the Sale and transfer of the Property, the Purchaser promises to pay Seller the sum of $2,500,000 (the "<u>Purchase Price</u>") as follows:

- A. The Purchaser has deposited the sum of $100,000 (the "<u>Earnest Money</u>") with the title company selected by Purchaser in the Agreement (the "<u>Title Company</u>"), said Earnest Money to be placed in an interest bearing account; and

- B. The Purchaser shall deposit with the Title Company the balance of the Purchase Price, and the Purchaser's share of closing costs on or before the Closing;

14. The Purchase Price is allocated as follows: $2,100,000 for the Land and Improvements; and $400,000 for the Intangible Property, Personal Property, Contracts and

- 5 -

goodwill associated with the Property in the manner and amounts to be agreed to at Closing by the Parties.

### Diligence Period

15. Pursuant to the Agreement, Purchaser is given a period of thirty (30) days (the "<u>Due Diligence Period</u>") to perform diligence on the Property. Purchaser has the right to terminate the Agreement without liability at any time prior to the expiration of Due Diligence Period. Purchaser is provided with reasonable access to the Property during the Due Diligence Period and prior to the Closing.

### Warranties and Closing Conditions

16. The Agreement contains certain representations and warranties and certain conditions to the Parties' obligations to complete the transactions under the Agreement. Debtors consider such representation and warranties and such conditions to be representative for contracts like the Agreement. The Seller's representations and warranties expire upon Closing and the Property is sold "where is, as is".

17. The Agreement provides that the Purchaser is acquiring certain Easements and Appurtenances and the Purchaser has investigated and will continue to investigate the existence and extent of the same. The order approving the Sale shall provide that there are no easements, rights, privileges, or appurtenances related to the Land, other than the Easements and Appurtenances. The Agreement also provides that the Purchaser shall identify the Easements and Appurtenances with reasonable particularity and shall file with the Court a list of such Easements and Appurtenances (the "Easements and Appurtenances List") prior to the expiration of the Due Diligence Period. Any person claiming the existence of an Easement or

Appurtenance not so identified shall be required to present its objection to the Easement and Appurtenance List to the Court for consideration prior to the hearing on the Sale Motion.

18. The agreement provides that the Purchaser is acquiring the Contracts. The Purchaser has investigated and will continue to investigate the existence and terms of the Contracts. The Agreement also provides that the Purchaser shall identify all leases and/or other contracts or agreements, including any modifications or amendments thereto related to the Property with reasonable particularity and shall file with the Court a list of such interests prior to the expiration of the Due Diligence Period (the "Contracts List"). Any person claiming the existence of an interest not identified in the "Contracts List" shall be required to present its objection to the Court for consideration prior to the hearing on the Sale Motion.

**B.** **Valuation**

19. A formal valuation of the Property has not been conducted.

**C.** **Marketing Efforts**

20. The Debtors commenced marketing efforts in early March, 2010 when they engaged broker Business Property Specialists Inc. (d/b/a NAI Daus) ("NAI Daus") to market and sell the Property and by contacting parties known to Seller who might be interested in purchasing the Property. NAI Daus estimates that approximately 300 prospective entities viewed the Property marketing materials through its broker-to-broker networking efforts. NAI Daus received another offer, however, the offer reflected in the Agreement is the highest and best offer received.

21. The Seller has executed the Agreement with Purchaser, subject to receipt of higher and better offers and approval of this Court. The Debtors believe that the terms of the

Agreement provide fair value for the Property. Accordingly, the Debtors have concluded that the Sale of the Property to Purchaser is in the best interest of the Debtors' estates.

### D. Section 363(b) of the Bankruptcy Code

22. A debtor may sell property of the estate outside of the ordinary course of business, subject to the approval of the Court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Pursuant to Rule 6004(f)(1) of the Bankruptcy Rules, sales of property outside of the ordinary course of business may occur by private sale or by public auction. The Debtors propose that the Court approve the Sale of the Property pursuant to the terms herein.

### E. Sale Process

23. Attached to this Motion are two orders; one order approving the proposed Sale Procedures (the "Sale Procedures Order"), see Exhibit B, and a second order authorizing the Sale of the Property (the "Sale Order"), see Exhibit C. The Debtors anticipate submitting the Sale Procedures Order to the Court in conjunction with the Sale Procedures Hearing proposed for August 26, 2010. The Debtors anticipate submitting the Sale Order to the Court in conjunction with the Sale Hearing proposed for September 16, 2010

24. Seller hereby seeks authority to utilize the proposed sale procedures set forth on Exhibit 1 to the proposed Bid Procedures Order attached hereto as Exhibit B (the "Sale Procedures"), including (i) the sale process timeline, (ii) initial topping bid and subsequent bid increment requirements, and (iii) the proposed breakup fee. The Debtors believe that the process described in the Sale Procedures Order will promote the efficient and effective consideration of potential further offers for the Property.

25. **Timeline.**  The Debtors propose the following Sale Procedures timeline (the "Timeline"):

| | |
|---|---|
| ➢ Sale Motion (this Motion) filed | August 5, 2010 |
| ➢ Objection deadline for Sale Procedures portion of the Sale Motion | August 20, 2010 |
| ➢ Hearing on Sale Procedures portion of the Sale Motion | August 26, 2010, 10:30 AM ET |
| ➢ Deadline for competing bids | September 13, 2010, 5:00 PM ET |
| ➢ Auction (10:00am ET) and objections to the Sale Motion (4:00 PM ET) | September 15, 2010 |
| ➢ Hearing on remainder of Sale Motion | September 16, 2010, 10:30 AM ET |

26. Subject to the Court's approval of the Sale Procedures, the Debtors propose setting September 13, 2010 as the deadline for providing competing bids, and September 15, 2010 as the Auction date and the deadline for filing with the Court, objections to the Sale Motion and the proposed sale of the Property. Competing bids must be delivered to Debtors' counsel, G. Christopher Meyer at Squire, Sanders & Dempsey, L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114  cmeyer@ssd.com by no later than 5:00 PM Eastern Time on September 15, 2010. For the sake of clarity, competing bidders are not required to file objections to the Sale. The Debtors propose holding a sale hearing on September 16, 2010, or at such other time that is convenient for the Court.

27. The Debtors also seek authority to use the sale notice attached hereto as Exhibit 2 to the Sale Procedures Order attached hereto as Exhibit B.

28. As described above, the Bid Procedures provide that any initial topping bid must be at least $100,000 in excess of the Purchaser's offer contained in the Agreement. Moreover, the Bid Procedures require that in the event of any competing bids for the Property, resulting in Purchaser not being the successful Purchaser, Purchaser will receive a breakup fee of $40,000 to be paid at the time of the closing of the Sale with such third party buyer. Purchaser has taken the

lead in offering to buy the Property. As the so-called "stalking horse bidder", it is reasonable for the Purchaser to receive a breakup fee to cover the costs and expenses of the Purchaser in this matter. Debtors believe that the $40,000 breakup fee contained in the Bid Procedures is reasonable under the circumstances. Further, it is also reasonable to set the initial topping bid of $100,000 and subsequent bid increments of $50,000 to establish an orderly process for assessing competing bids. It would be a waste of resources to allow competing bidders to frustrate the Seller's intentions regarding the Agreement and add to the estate's cost in reviewing bids if a new bidder submitted an offer just a few dollars more than the amount reflected in the Agreement.

**F.     Basis for Relief**

29.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors request that the Court approve the Sale of the Property free and clear of liens, claims, encumbrances, and interests. Section 363(b) of the Bankruptcy Code, specifically authorizes asset sales outside the ordinary course of business and provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate[.]" 11 U.S.C. § 363(b)(1).

30.     In approving the sale of assets outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363(b) of the Bankruptcy Code, courts, including the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) (hereinafter "*Lionel*"). *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986). The issue before the *Lionel* court was "to what extent chapter 11 permits a bankruptcy judge to authorize the sale of an important asset of the bankrupt's estate, out of the ordinary course of business and prior to acceptance and outside

of any plan of reorganization." *See id.* at 1070-71; *see also Stephens*, 789 F.2d at 389; *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991).

31. The *Lionel* test requires a debtor to establish, as a threshold matter, a "sound business reason" justifying the pre-confirmation sale of assets. *See Lionel*, 722 F.2d at 1070-71. The *Lionel* court held that, when addressing a motion pursuant to Bankruptcy Code section 363(b), a bankruptcy judge should consider all salient factors and the business justification for a debtor to sell assets pursuant to section 363(b). *See id.*

32. To demonstrate a sound justification warranting a sale, courts within the Sixth Circuit have developed a four-part test requiring a debtor to demonstrate: (1) a sound business reason for the sale; (2) good faith; (3) an adequate sale price; and (4) accurate and reasonable notice of the sale. *See In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994).

33. The Sale proposed herein satisfies the Sixth Circuit's test for approving a section 363 sale. Seller has marketed the Property through its engagement of NAI Daus and through the Debtors' various other contacts and connections. Seller and Purchaser participated in negotiations at arms' length and in good faith, which yielded the Agreement currently at issue.

34. The cash price of $2,500,000 offered by Purchaser is adequate and reasonable based upon the totality of the assets and liabilities that will become the obligation of Purchaser if the Court approves the Agreement. Sound business reasons support selling the Property to Purchaser.

- 11 -

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 11 of 16

### G. Section 363(f) of the Bankruptcy Code

35. Section 363(f) of the Bankruptcy Code permits debtors to sell assets free and clear of liens, claims, and encumbrances with interests in the property attaching to the net proceeds of the sale. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

A. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

B. such entity consents;

C. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

D. such interest is in bona fide dispute; or

E. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

36. The Agreement meets the requirements of section 363(f). The Property is being sold subject to the interests of tenants in the Property by virtue of the assumption and assignment of the Contracts. Aside from such interests, and the Easements and Appurtenances being acquired by Purchaser, the Property is subject only to the alleged liens of the Senior Noteholders. Such liens are the subject of a bona fide dispute and the holders of such liens could be compelled to accept a money satisfaction of such interests. In addition, the Debtors' believe that such holders will consent to the proposed Sale.

### H. Section 365 of the Bankruptcy Code

37. Executory contracts may be rejected or assumed and assigned pursuant to section 365 of the Bankruptcy Code. Generally, courts adopt the "Countryman" definition for executory contracts as contracts where obligations of both the bankrupt and the other party remain unperformed, which if left unperformed by one party would result in a material breach excusing

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 12 of 16

performance by the other. *See Chattanooga Memorial Park v. Still* (*In re Jolly*), 574 F.2d 349, 351 (6th Cir. 1978). Because it appears that performance remains due by both the non-debtor parties and the Debtors, the Contracts are executory contracts within the meaning of section 365 of the Bankruptcy Code. Accordingly, the Contracts may be rejected or assumed and assigned.

38. In this case, pursuant to the Agreement, Debtor intends to assume and assign certain of the Contracts and to reject the remainder. Courts routinely authorize the assumption and assignment or rejection of executory contracts upon a showing that the debtor's decision is an exercise in sound business judgment that will benefit the debtor's estate. *See e.g.*, *In re Weingarten Nostate, Inc.*, 396 F.3d at 742; *Borman's Inc. v. Allied Supermarkets, Inc.* (*In re Allied Supermarkets, Inc.*), 706 F.2d 187, 189 (6th Cir. 1983); *In re Raby*, 139 B.R. 833, 836 (Bankr. N.D. Ohio 1991). The Debtor believes, in its sound business judgment, that the assignment and assumption or rejection of certain Contracts, in connection with the Agreement, is in the best interest of the Debtor's estate.

### IV. WAIVER OF BANKRUPTCY RULE 6004(h)

39. Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Because of the current posture of these cases and the desirability of finalizing the Sale as soon as possible, the Debtors request that any order approving the Sale be effective immediately by providing that the 14-day stay is inapplicable.

### V. NOTICE OF THIS MOTION

40. The Bankruptcy Court's electronic filing system will provide notice of this Motion to all parties that have registered for email notification of documents filed in these

proceedings.  In addition, the Debtors will serve a Notice of this Motion and the Sale Procedures Hearing by first class U.S. mail, postage prepaid, on the following parties:  (a) the office of the U.S. Trustee; (b) counsel for the Official Committee of Unsecured Creditors; (c) all parties that have filed requests for service under Bankruptcy Rule 2002; (d) all creditors; (e) The Bank of New York Mellon as trustee for the holders of the Debtors' 5.78% Senior Notes (the "<u>Senior Noteholders</u>"); (f) counsel for the Senior Noteholders; (g) The Bank of New York Mellon as debenture and property trustee for the holders of the Ohio Savings Capital Trust I 9.50% Capital Securities; (h) the Depository Trust and Clearing Corporation; (i) the Office of Thrift Supervision; (j) the Federal Deposit Insurance Corporation; (k) the Internal Revenue Service; (l) the Ohio, Florida, and Arizona Departments of Taxation; (m) the State Attorneys General for Ohio, Florida, and Arizona; (n) the Securities and Exchange Commission; (o) the City of Cleveland; (p) Cleveland-Cuyahoga County Port Authority; (q) U.S. Bank, N.A., as trustee for the 2004 Cleveland-Cuyahoga County Port Authority Taxable Development Revenue Bonds; (r) Huntington National Bank, as trustee for the 2003 City of Cleveland Ohio Economic Development Revenue Bonds; (s) all persons who have made offers to purchase the Property (t) all persons known to have an interest in the Property and (u) all persons with an interest in any Contract (collectively, the "<u>Notice Parties</u>").  In addition, the Debtors will cause a Notice of this Motion and the Sale Procedures Hearing to published in the *Cleveland Plain Dealer*.  Under the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

- 14 -

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 14 of 16

## VI. NO PRIOR REQUEST

41. No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these chapter 11 cases.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court (a) enter the Sale Procedures Order, substantially in the form attached hereto as Exhibit B, approving the Sale Procedures, and (b) enter the Sale Order attached hereto as Exhibit C, which (i) authorizes Seller to perform the Agreement, (ii) authorizes the sale of the Property to Purchaser, subject to receipt of higher and better offers, free and clear of liens, claims, interests, and encumbrances, pursuant to section 363 of the Bankruptcy Code, (iii) approves the assumption and assignment or rejection of executory contracts, (iv) waives the Bankruptcy Rule 6004(h) 14-day stay, and (v) waives the Local Bankruptcy Rule 9013-2 memorandum requirement, and (c) grant such other relief as the Court deems just and proper.

Dated:   August 5, 2010

Respectfully submitted,
SQUIRE, SANDERS & DEMPSEY L.L.P.


 */s/ G. Christopher Meyer*_____
G. Christopher Meyer  (Ohio 0016268)
Sherri L. Dahl (Ohio 0073621)
Peter R. Morrison (Ohio 0085127)
127 Public Square, Suite 4900
Cleveland, Ohio 44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
E-mail:   CMeyer@ssd.com
E-mail:   SDahl@ssd.com
E-mail:   PMorrison@ssd.com

And

Stephen D. Lerner (Ohio 0051284)
221 E. Fourth Street, Suite 2900
Cincinnati, OH  45202
Telephone:  (513) 361-1200
Facsimile:   (513) 361-1201
E-mail:   SLerner@ssd.com

COUNSEL FOR DEBTORS

- 16 -

09-21323-pmc    Doc 635    FILED 08/05/10    ENTERED 08/05/10 15:47:50    Page 16 of 16