UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMFIN FINANCIAL CORPORATION, et al.,[1] | ) Case No. 09-21323 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Judge Pat Morgenstern-Clarren |

**MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING PROPOSED SALE PROCEDURES, (B) AUTHORIZING AMFIN REAL ESTATE INVESTMENTS, INC. TO SELL CERTAIN ASSETS TO HARBOR GROUP INTERNATIONAL, LLC FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (C) APPROVING THE EMPLOYMENT OF HILCO REAL ESTATE, LLC, PURSUANT TO 11 U.S.C. §327 (D) WAIVING THE BANKRUPTCY RULE 6004(h) 14-DAY STAY, AND (E) WAIVING THE LOCAL BANKRUPTCY RULE 9013-2
<u>MEMORANDUM REQUIREMENT</u>**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move (the "Sale Motion") the Court for entry of an order (a) approving proposed sale procedures, (b) authorizing debtor AmFin Real Estate Investments, Inc. to consummate a purchase agreement,[2] for the sale (the "Sale") of certain assets to Harbor Group International, LLC (subject to receipt of higher and better offers), free and clear of liens, claims, interests, and encumbrances, pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), (c) approving the employment of Hilco Real Estate, LLC, pursuant to 11 U.S.C. §327, assumption and assignment or rejection of executory contracts,

---

[1] The Debtors are: AmTrust Financial Corporation nka AmFin Financial Corporation (Case No. 09-21323), AmTrust Real Estate Investments, Inc. nka AmFin Real Estate Investments, Inc., (Case No. 09-21328), AmTrust Insurance Agency, Inc. nka AmFin Insurance Agency, Inc. (Case No. 09-09-21325), AmTrust Investments Inc. nka AmFin Investments Inc. (Case No. 09-21331), AmTrust Properties Inc. nka AmFin Properties Inc. (Case No. 09-21329) and AmTrust Management Inc. nka AmFin Management Inc. (Case No. 09-21332).

[2] The Agreement is attached hereto as Exhibit A.

(d) waiving the Bankruptcy Rule 6004(h) 14-day stay, and (e) waiving the Local Bankruptcy Rule 9013-2 memorandum requirement. In support of the foregoing, the Debtors respectfully represent as follows.[3]

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### II. BACKGROUND

2. On November 30, 2009 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By orders entered on December 4, 2009, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. *See* Docket No. 37.

3. The Debtors have been engaged in the evaluation of their property for sale or other disposition since these cases were filed. The Debtors, pursuant to this Court's orders, have employed GlassRatner Advisory & Capital Group LLC as financial advisors, based in part on GlassRatner's experience and expertise with the management and sale of real estate and interests in real estate developments.

4. The Debtors, through their professionals, have received several inquiries regarding the parking garage at 515 Euclid Avenue, Cleveland, Ohio (the "Property"). However, only one potential buyer, Harbor Group International LLC, has submitted a formal written contract to purchase the Property.

---

[3] Capitalized terms not defined herein shall have the respective meanings as defined in the Agreement.

5. The Debtors have negotiated a purchase price of $7,500,000 and the terms of a purchase agreement with Harbor Group International, LLC, subject to this Court's approval.

6. The Debtors have also identified a proposed broker, Hilco Real Estate, LLC, whom they propose to retain, pursuant to 11 U.S.C. §327, subject to this Court's approval, to provide notice of the proposed sale and the opportunity to bid, to other potential buyers and to solicit competing bids. Hilco has experience in conducting sales of personal property and real estate under the bankruptcy code, and also has particular experience with parking garage properties.

7. The pricing structure for the services to be provided by Hilco reflects the fact that a proposed bidder has already been secured and is under contract, and that Hilco's services in advertising the availability of the Property and the opportunity to submit competing bids pursuant to the sale procedures approved by this Court will be focused on obtaining a higher bid and will not be required to achieve an initial offer. Consequently, Hilco's proposed fees ($75,000 plus reimbursement of expenses, together with a ten percent premium on that portion of any purchase price received by the Debtors exceeding $7,500,000) are significantly less than the pricing structure common for full service brokers. Fixed or percentage fee arrangements for professionals are both permitted under 11 U.S.C. § 328.

8. The Debtors have submitted, as Exhibit 1 to the Sale Procedures Order attached hereto as Exhibit B, a set of proposed Sale Procedures. The proposed Sale Procedures establish requirements for submitting Qualified Bids and for becoming a Qualified Bidder, provide procedures for disseminating due diligence materials, and govern breakup fee and auction bidding issues. The Debtors believe that the approval by the Court of the Sale Procedures will

Imanage\067066.000008\1229837.1-TWC

provide the Debtors with necessary assurances concerning the ability of proposed bidders to perform, and provide a reasonable set of parameters for bidding.

9. To facilitate a level playing field among bidders, the proposed Sale Procedures also require any Qualified Bidder to submit, together with its written offer, a signed "Purchase Agreement by a Qualified Bidder" which is closely modeled on the Purchase Agreement executed by Harbor Group International LLC but with changes to conform it to the proposed Sale Procedures. The form of the Purchase Agreement by a Qualified Bidder is attached hereto as Exhibit D.

### III. REQUESTED RELIEF

10. Debtor AmFin Real Estate Investments, Inc. ("Seller") hereby seeks authority to sell certain real estate commonly known as the Euclid Avenue Parking Garage, located at 515 Euclid Avenue, Cleveland, Ohio, to Harbor Group International LLC ("Purchaser"), subject to receipt of higher and better offers. Specifically, the Seller seeks authority to consummate and perform obligations included within the Real Estate Purchase Agreement attached hereto as Exhibit A (the "Agreement"), subject to higher and better offers solicited and received under the Sale Procedures submitted for approval herewith.

A. **Summary of Sale Terms**

11. Certain provisions of the Agreement and the Sale are summarized below. This summary is qualified by reference to the Agreement attached as Exhibit A for a more complete description of terms summarized herein.

### Description of Seller Property Included in Transfer

12. Pursuant to the Agreement, Seller intends to transfer to the Purchaser (Purchaser and Seller collectively, the "Parties") and Purchaser intends to acquire the following assets (the "Property") at a closing anticipated promptly following the sale hearing (the "Closing"):

   (a) The land (including all air rights) known as 515 Euclid Avenue in the City of Cleveland, Cuyahoga County, Ohio, Permanent Parcel Nos. 101-26-012, 101-26-014 and 101-26-355, and described further in Exhibit A attached hereto and made a part hereof ("Land");

   (b) any and all buildings and other improvements located on the Land (collectively, the "Improvements");

   (c) all easements, rights, privileges and appurtenances thereunto belonging, including all right, title and interest, if any of Seller in and to any land lying in the right-of-way of any street, highway or highway ramp in front of or adjoining the Land to the centerline thereof (collectively, the "Easements and Appurtenances");

   (d) all certificates, licenses, permits, zoning variances, special or other use permits, authorizations, approvals, entitlements, grants of right, applications and consents owned or held by Seller in connection with the Land (collectively, the "Intangible Property");

   (e) all of Seller's right, title and interest in all appliances, furniture, equipment, machinery, fixtures, carpet and other personal property, if any, located on or about the Land and Improvements, and any documents, drawings, records of operations and maintenance manuals for any such personal property or records of development of the Land or construction of the Improvements (collectively, the "Personal Property"); and

   (f) all of Seller's right, title and interest, if any, in any leases and/or other contracts and agreements, including any modifications or amendments thereto, benefiting the Land and Improvements and approved by Purchaser, in Purchaser's sole and absolute discretion (collectively, the "Contracts").

### Purchase Price

13. In consideration for the Sale and transfer of the Property, the Purchaser promises to pay Seller the sum of $7,500,000 (the "Purchase Price") as follows:

(a) The Purchaser has deposited the sum of $250,000 (the "Earnest Money") with the title company selected by Purchaser in the Agreement (the "Title Company"), said Earnest Money to be placed in an interest bearing account; and

(b) The Purchaser shall deposit with the Title Company the balance of the Purchase Price, and the Purchaser's share of closing costs on or before the Closing;

(c) The Purchaser will also assume all of Seller's obligations under the TIF Loan Agreement with the City of Cleveland.

**Diligence Period**

14. Pursuant to the Agreement, Purchaser is given a period of thirty (30) days (the "Due Diligence Period") after execution of the Agreement, which occurred on March 17, 2011, to perform diligence on the Property. Purchaser has the right to terminate the Agreement without liability at any time prior to the expiration of Due Diligence Period. Purchaser is provided with reasonable access to the Property during the Due Diligence Period and prior to the Closing.

**Warranties and Closing Conditions**

15. The Agreement contains certain representations and warranties and certain conditions to the Parties' obligations to complete the transactions under the Agreement. Debtors believe that such representations, and warranties and conditions are typical of those generally found in similar agreements. The Seller's representations and warranties expire upon Closing and the Property is sold "where is, as is".

**B.  Proposal Retention of Hilco Real Estate, LLC**

16. The Seller has executed the Agreement with Purchaser, subject to receipt of higher and better offers and approval of this Court. The Debtors believe that the terms of the Agreement provide fair value for the Property. Accordingly, the Debtors have concluded that the Sale of the Property to Purchaser, subject to the solicitation and receipt of higher and better offers, is in the best interest of the Debtors' estates.

17. To facilitate the solicitation and receipt of higher and better offers, the Debtors propose to retain Hilco Real Estate LLC ("Hilco") to market the Property to potential buyers, pursuant to 11 U.S.C. § 327. Hilco is experienced in sales of real estate in the bankruptcy context and has specific knowledge and experience with parking garages. Hilco does not hold or represent any interest adverse to the estate, and is a "disinterested person" pursuant to 11 U.S.C. §327(a). A letter describing Hilco's capabilities is attached as Exhibit E. A declaration of Hilco's disinterested person status will be filed separately. The proposed contract for Hilco's retention, subject to this Court's approval, is attached as Exhibit F.

18. Hilco is willing to use its substantial electronic marketing capabilities to advertise the sale of the Property and the opportunity to submit competing bids. In addition, Hilco will use its personal contacts with well-qualified buyers to generate interest in the sale. Hilco would receive a flat fee of $75,000 for its efforts, together with reimbursement of expenses and a premium of 10% of any purchase price received by the Debtors in excess of $7,500,000. The Debtors believe that retention of Hilco under these terms is advantageous to the estate because (i) the proposed fee is substantially less than a traditional broker would receive, and (ii) Hilco is incentivized under the retention terms to produce higher bids from Qualified Bidders. Retention of professionals on a fixed or percentage fee basis (this proposed retention includes both factors) is authorized by 11 U.S.C. §328(a).

C. **Section 363(b) of the Bankruptcy Code**

19. A debtor may sell property of the estate outside of the ordinary course of business, subject to the approval of the Court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Pursuant to Rule 6004(f)(1) of the Bankruptcy Rules, sales of property outside of the

Imanage\067066.000008\1229837.1-TWC

09-21323-pmc    Doc 967    FILED 03/29/11    ENTERED 03/29/11 16:47:46    Page 7 of 14

ordinary course of business may occur by private sale or by public auction. The Debtors propose that the Court approve the Sale of the Property pursuant to the terms herein.

**D.      Sale Process**

20.     Attached to this Motion are two orders; one order approving the proposed Sale Procedures (the "Sale Procedures Order"), see Exhibit B, and a second order authorizing the Sale of the Property (the "Sale Order"), see Exhibit C. The Debtors anticipate submitting the Sale Procedures Order to the Court in conjunction with the Sale Procedures Hearing proposed for April 21, 2011. The Debtors anticipate submitting the Sale Order to the Court in conjunction with the Sale Hearing proposed to be held on the Court's regularly scheduled Chapter 11 docket in June, 2011.

21.     Seller hereby seeks authority to utilize the proposed sale procedures set forth on Exhibit 1 to the proposed Sale Procedures Order attached hereto as Exhibit B (the "Sale Procedures"), including (i) process for qualifying as a bidder; (ii) provision of due diligence materials; (iii) the sale process timeline, (iv) initial topping bid and subsequent bid increment requirements, and (v) the proposed breakup fee. The Debtors believe that the process described in the Sale Procedures Order will promote the efficient and effective consideration of potential further offers for the Property.

22.     **Timeline.**  The Debtors propose the following Sale Procedures timeline (the "Timeline"):

| | |
|---|---|
| ➢ Sale Motion (this Motion) filed | March 29, 2011 |
| ➢ Objection deadline for Sale Procedures portion of the Sale Motion | April 12, 2011 |
| ➢ Hearing on Sale Procedures portion of the Sale Motion | April 21, 2011, 10:30 AM |
| ➢ Deadline for competing bids | June ___, 2011, 5:00 PM |
| ➢ Auction (10:00am ET) and objections to the Sale Motion (4:00 PM ET) | June___, 2011 |

- 8 -

| ➤ Hearing on remainder of Sale Motion | June __, 2011, 10:30 AM |

23. Subject to the Court's approval of the Sale Procedures, the Debtors propose setting June ___, 2011 as the deadline for providing competing bids, and June __, 2011 as the Auction date and the deadline for filing objections to the Sale Motion and the proposed sale of the Property. Competing bids must be delivered to Debtors' counsel, Glenn E. Morrical, Tucker Ellis & West LLP, 1150 Huntington Building, 925 Euclid Avenue, Cleveland, Ohio 44115 gmorrical@tuckerellis.com and to counsel for the Purchaser, Lawrence H. Bryant, Williams Mullen, Dominion Tower, Suite 1700, 999 Waterside Drive, Norfolk, VA 23510, lbryant@williamsmullen.com, and counsel for the Committee, Daniel A. DeMarco, Hahn Loeser, 200 Public Square, Suite 2800, Cleveland, Ohio 44114, dademarco@hahnlaw.com, by no later than 5:00 PM Eastern Time on June ___, 2011. For the sake of clarity, competing bidders are not required to file objections to the Sale merely to preserve their right to bid. The Debtors propose holding a sale hearing on June ___, 2011, or at such other time as is convenient for the Court.

24. The Debtors also seek authority to use the sale notice attached hereto as Exhibit 2 to the Sale Procedures Order attached hereto as Exhibit B.

25. As described above, the Bid Procedures provide that any initial topping bid must be at least $250,000 in excess of the Purchaser's offer contained in the Agreement. Moreover, the Bid Procedures require that in the event of any competing bids for the Property resulting in Purchaser not being the successful Purchaser, Purchaser will receive a breakup fee equal to three percent (3%) of the Purchase Price as defined in the Agreement to be paid at the time and in the manner provided in the Agreement. Purchaser has taken the lead in offering to buy the Property. As the so-called "stalking horse bidder", it is reasonable for the Purchaser to receive a breakup

fee to cover the costs and expenses of the Purchaser in this matter. Debtors believe that the three percent (3%) breakup fee contained in the Bid Procedures is reasonable under the circumstances. Further, it is also reasonable to set the initial topping bid of $250,000 and subsequent bid increments of $100,000 to establish an orderly process for assessing competing bids.

E. **Basis for Relief**

26. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors request that the Court approve the Sale of the Property free and clear of liens, claims, encumbrances, and interests. Section 363(b) of the Bankruptcy Code, specifically authorizes asset sales outside the ordinary course of business and provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate[.]" 11 U.S.C. § 363(b)(1).

27. In approving the sale of assets outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363(b) of the Bankruptcy Code, courts, including the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) (hereinafter "*Lionel*"). *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986). The issue before the *Lionel* court was "to what extent chapter 11 permits a bankruptcy judge to authorize the sale of an important asset of the bankrupt's estate, out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization." *See id.* at 1070-71; *see also Stephens*, 789 F.2d at 389.

28. The *Lionel* test requires a debtor to establish, as a threshold matter, a "sound business reason" justifying the pre-confirmation sale of assets. *See Lionel*, 722 F.2d at 1070-71. The *Lionel* court held that, when addressing a motion pursuant to Bankruptcy Code section

363(b), a bankruptcy judge should consider all salient factors and the business justification for a debtor to sell assets pursuant to section 363(b). *See id.*

29. To demonstrate a sound justification warranting a sale, courts within the Sixth Circuit have developed a four-part test requiring a debtor to demonstrate: (1) a sound business reason for the sale; (2) good faith; (3) an adequate sale price; and (4) accurate and reasonable notice of the sale. *See In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994).

30. The Sale proposed herein satisfies the Sixth Circuit's test for approving a section 363 sale. Seller determined that it is in Debtor's best interests to sell the Property now, while interest in downtown parking has been revived by the proposed casino to be located in the Higbee Building. The Purchaser owns, among other assets, 200 Public Square, and therefore has a substantial interest in downtown Cleveland and parking facilities in the area. The Debtors believe that Purchaser is a natural strategic buyer. Seller and Purchaser participated in negotiations at arms' length and in good faith, which yielded the Agreement currently at issue.

31. The cash price of $7,500,000 offered by Purchaser is adequate and reasonable based upon the totality of the assets and liabilities that will become the obligation of Purchaser if the Court approves the Agreement. Such liabilities include, in addition to Purchaser's payment of the Purchase Price, assumption of the TIF obligations undertaken by the Debtors and the resulting release of the Debtor of any further obligations under the TIF bonds. Sound business reasons support selling the Property to Purchaser.

Imanage\067066.000008\1229837.1-TWC

09-21323-pmc    Doc 967    FILED 03/29/11    ENTERED 03/29/11 16:47:46    Page 11 of 14

## F. Section 363(f) of the Bankruptcy Code

32. Section 363(f) of the Bankruptcy Code permits debtors to sell assets free and clear of liens, claims, and encumbrances with interests in the property attaching to the net proceeds of the sale. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

33. The Agreement meets the requirements of section 363(f). The Property is being sold subject to the interests of the only tenant in the Property. Aside from that tenant's interests, and the TIF bonds discussed above, the Property is subject only to liens, claims and encumbrances of the trustee for bonds issued by the Cleveland-Cuyahoga County Port Authority. The holders of such liens, claims and encumbrances could be compelled to accept a money satisfaction of such interests. In addition, the Debtors' believe that such holders will consent to the proposed Sale.

## IV. WAIVER OF BANKRUPTCY RULE 6004(h)

34. Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Because of the current posture of these cases and the desirability of finalizing the Sale as soon as possible, the Debtors request that

any order approving the Sale be effective immediately by providing that the 14-day stay is inapplicable.

## V. NOTICE OF THIS MOTION

35. The Bankruptcy Court's electronic filing system will provide notice of this Motion to all parties that have registered for email notification of documents filed in these proceedings. In addition, the Debtors will serve a Notice of this Motion and the Sale Procedures Hearing by first class U.S. mail, postage prepaid, on the following parties: (a) the office of the U.S. Trustee; (b) counsel for the Official Committee of Unsecured Creditors; (c) all parties that have filed requests for service under Bankruptcy Rule 2002; (d) all creditors; (e) The Bank of New York Mellon as trustee for the holders of the Debtors' 5.78% Senior Notes (the "Senior Noteholders"); (f) counsel for the Senior Noteholders; (g) The Bank of New York Mellon as debenture and property trustee for the holders of the Ohio Savings Capital Trust I 9.50% Capital Securities; (h) the Depository Trust and Clearing Corporation; (i) the Office of Thrift Supervision; (j) the Federal Deposit Insurance Corporation; (k) the Internal Revenue Service; (l) the Ohio, Florida, and Arizona Departments of Taxation; (m) the State Attorneys General for Ohio, Florida, and Arizona; (n) the Securities and Exchange Commission; (o) the City of Cleveland; (p) Cleveland-Cuyahoga County Port Authority; (q) U.S. Bank, N.A., as trustee for the 2004 Cleveland-Cuyahoga County Port Authority Taxable Development Revenue Bonds; (r) Huntington National Bank, as trustee for the 2003 City of Cleveland Ohio Economic Development Revenue Bonds; (s) all persons who have made offers to purchase the Property; and (t) all persons known to have an interest in the Property. Under the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

Imanage\067066.000008\1229837.1-TWC

09-21323-pmc   Doc 967   FILED 03/29/11   ENTERED 03/29/11 16:47:46   Page 13 of 14

## VI. NO PRIOR REQUEST

36. No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these chapter 11 cases.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court (a) enter the Sale Procedures Order, substantially in the form attached hereto as Exhibit B, approving the Sale Procedures and the retention of Hilco Real Estate, LLC pursuant to 11 U.S.C. §327, and (b) enter the Sale Order attached hereto as Exhibit C, which (i) authorizes Seller to perform the Agreement, (ii) authorizes the sale of the Property to Purchaser, subject to receipt of higher and better offers, free and clear of liens, claims, interests, and encumbrances, pursuant to section 363 of the Bankruptcy Code, (iii) waives the Bankruptcy Rule 6004(h) 14-day stay, and (iv) waives the Local Bankruptcy Rule 9013-2 memorandum requirement, and (c) grant such other relief as the Court deems just and proper.

Dated: March 29, 2011

Respectfully submitted,
TUCKER ELLIS & WEST LLP

/s/ Thomas W. Coffey
Glenn E. Morrical (Ohio 0013070)
Thomas W. Coffey (Ohio 0046877)
Scott J. Kelly (Ohio 0069835)
1150 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
E-mail: gmorrical@tuckerellis.com
E-mail: tcoffey@tuckerellis.com
E-mail: skelly@tuckerellis.com

SPECIAL COUNSEL FOR DEBTORS