UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 09-21323 (jointly administered) |
| ) | |
| AMFIN FINANCIAL CORPORATION, ) | Chapter 11 |
| *et al.,* ) | |
| ) | Chief Judge Pat E. Morgenstern-Clarren |
| Reorganized Debtors. ) | |
| ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |

The Federal Deposit Insurance Corporation, as receiver of AmTrust Bank (FDIC), moves to strike a second amended objection filed by the debtors to the FDIC's amended proof of claim.[1] The FDIC argues that the debtors are prohibited from raising a new defense in their most recent amended objection because it is past the bar date for doing so established in the confirmed plan. The debtors oppose the motion, denying that the plan has any such bar date for raising this defense.[2] For the reasons stated below, the FDIC's motion is denied.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and it is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

---

[1] Docket 1513, 1516, 1519.

[2] Docket 1517.

## BACKGROUND FACTS

The debtors filed their chapter 11 cases on November 30, 2009. An order confirming their amended plan was entered on November 4, 2011.[3] The FDIC filed multiple proofs of claim, including a $518 million priority claim which it amended on April 6, 2010, May 28, 2010, October 24, 2011, and May 24, 2013. The debtors objected to the first amended claim on June 6, 2011 and later amended that objection. The issue here relates to the debtors' second amended objection filed on July 18, 2013.

From the beginning, the debtors and the FDIC agreed that certain issues would be decided sequentially, in the interest of efficiency and economy. They focused on two of the significant claims made by the FDIC: One relates to a capital maintenance claim under 11 U.S.C. § 365(o) and the other to a claim that certain tax refunds belong to the FDIC. The agreement to place the other disputes on hold is reflected in a December 19, 2011 stipulation in which the parties agreed not to go forward with a hearing that had been set for December 22, 2011.[4]

In the meantime, District Court judges heard both the capital maintenance claim and the tax refund claim, deciding both claims in favor of the debtors.[5] The debtors and the FDIC then turned to the remaining issues in the FDIC's proof of claim. On February 28, 2013, on their joint

---

[3] Docket 1314, 1315.

[4] Docket 1342.

[5] The District Court judgment in the capital maintenance claim in favor of the debtors was upheld by the Sixth Circuit. *Fed. Deposit Ins. Corp. v. AmTrust Fin. Corp. (In re AmTrust Fin. Corp.)*, No. 11-3677 (6th Cir. Sept. 14, 2012). The District Court judgment on the tax refunds is on appeal. *Fed. Deposit Ins. Corp. v. AmFin Fin. Corp.*, No. 1:11CV2574 (N.D. Ohio Mar. 26, 2013), *appeal docketed*, No. 13-3669 (6th Cir. June 3, 2013).

2

motion, the court entered a case management schedule.[6] On June 11, 2013, again at the parties' request, the court modified those dates.[7]

On July 18, 2013, the debtors amended their objection to add this defense: An October 31, 2008 $40 million transaction is a fraudulent transfer. Based on statements of counsel at oral argument, the amendment itself does not seem to raise new factual issues. To the extent that the FDIC feels otherwise, the debtors have offered to extend discovery.

## ISSUE

While the FDIC claim and the debtors' objections to it raise complicated issues and involve large sums of money, the dispute here can be stated simply: Did the confirmed plan create a bar date by which the debtors had to raise each and every defense to the FDIC claim?

## THE DEBTORS' NOVEMBER 4, 2011 CONFIRMED PLAN OF REORGANIZATION

The FDIC's argument hinges on section 6.01 of the confirmed plan, which provides in relevant part:

> Article 6 Provisions for Treatment of Subsequent Plan Distributions
>
> 6.01 <u>Objections and Estimations of Claims.</u> The Debtors or the Reorganized Debtors shall object to the allowance of Priority Claims, Claims and Equity Interests with respect to which they dispute liability in whole or in part . . . Unless otherwise ordered by the Bankruptcy Court, the Debtors or Reorganized Debtors shall serve and file any objections . . . as soon as practicable, but in no event later than the date that distributions would otherwise be made to holders of such Priority Claims, Claims or Equity Interests under the Plan . . . .[8]

---

[6] Docket 1483.

[7] Docket 1501.

[8] Docket 1284.

Article 6 goes on to address the reserve fund to be created by the Reorganized Debtors, as well as how and when claim distributions shall be made when claims, which are objected to, are later allowed.[9]

## THE POSITIONS OF THE PARTIES

The FDIC argues that § 6.01 set a bar date by which the debtors were required to identify each and every defense they had to the FDIC claim. The argument continues that the $40 million transaction is a new defense that the debtors are now prohibited from raising.

The debtors respond that § 6.01 does not create a bar date. Instead, together with the remaining parts of Article 6, it describes the procedure by which plan payments shall be made and how claims that are objected to, but not yet resolved, shall be treated. In short, it is irrelevant to this issue.

## DISCUSSION

A confirmed plan is a contract between the debtor and its creditors. *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006). This court has the authority to interpret language in that new contract. *Id.* State law, in this case Ohio law,[10] governs the interpretation. *Morris v. Zelch* (*In re Reg'l Diagnostics, LLC*), 372 B.R. 3, 12 (Bankr. N.D. Ohio 2007). Under Ohio law, contracts are interpreted to give

---

[9] In relevant part, the term "allowed" with respect to a claim is defined as a claim "as to which no objections to the allowance thereof has been filed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim . . . in whole or part." *See* Plan at Exh. A.

[10] Section 14.03 of the plan provides that Ohio law governs plan construction.

effect to the intent of the parties; the plain and ordinary meaning of the language used in the contract controls unless another meaning is clearly apparent from the terms of the agreement. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011).

On its face, Article 6 deals with distributions under the plan after the plan is implemented under Article 5. All sections under Article 6 must, therefore, be read with that subject matter in mind. Section 6.01 says, in essence, that allowed claims are eligible for distributions and disputed claims are not. When a claims dispute is resolved, the money set aside in the reserve fund will either be used to pay the claim or it will be returned to the debtor. To create those two groups, the debtors were required to object to disputed claims no later than the date on which those claims would be paid. This makes sense: Without an objection, the creditor would receive a payment on a disputed claim and if the debtors later succeeded in defeating the claim they would have to try to recover the premature payment. Retaining the funds during this period also permits the debtors to invest the disputed money in an interest-bearing Reserve Fund as provided for in § 6.06. There is nothing in this payment scheme that prohibits the debtors from fleshing out defenses to a previously-objected to claim as that claim rose to a position where it would be addressed and resolved.

The FDIC argues that even though the debtors timely objected to its claim, the debtors were required to raise all defenses no later than December 12, 2011 (the day on which initial distributions were paid). However, this is simply not what the plan says and it is not consistent with the intent of § 6.01. As the debtors note, "[n]othing in the language of the Plan required Debtors to state, in full and final form, all of their bases for objecting to a given claim by a date certain. Nor does Section 6.01 contain any language that could be read to preclude subsequent

5

amendments to objections."[11]  And, stepping back, why would the debtors have agreed to such a limitation when the parties had not even begun discovery on the part of the FDIC claim that had not been removed to the District Court?  The plain reading of Article 6 is that they did not.

The FDIC additionally points to the definition of "allowed" in exhibit A to the plan as supporting its view that the plan required the debtors to raise each and every defense no later than December 12, 2011.  That definition does not help the FDIC's case.  Logically enough, an allowed claim is defined in part for purposes of distribution as a claim that either drew no timely objection from the debtors or that, after objection, has been resolved by a final order that requires the claim to be paid in whole or in part.  Again, this speaks to whether and when a claim will be paid.  This language does not restrict the debtors' ability to defend against a claim where the debtors filed a timely objection.

## THE REMAINING ISSUES RAISED BY THE FDIC

On the assumption that the plan did create a bar date, the FDIC goes on to counter two arguments that it felt the debtors would make; i.e., that they should be given leave to amend their objection to raise this defense and that their failure to include this defense fell within Federal Rule of Civil Procedure 60(b)'s excusable neglect standard.  The court does not need to address those additional issues because there is no bar date along the lines argued by the FDIC; therefore, there is no need to amend or to excuse.

The motion to strike is denied.  The claims dispute will go forward on the merits.

---

[11] Debtors' Opposition at 6.

Counsel are to confer and jointly file a report by **November 13, 2013** addressing whether the discovery schedule currently in place needs to be revised to permit the FDIC to explore the facts raised in the amendment.

IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge